UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GURSEWAK SINGH

                Plaintiff,

      -against-

                                                            EDNY 18 CV 5870

LINTECH ELECTRIC, INC.;
LINDEN J. TUDOR

                Defendants
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

                               JONATHAN SILVER, ESQ.
                               Attorney for Plaintiff
                               80-02 Kew Gardens Road
                               Kew Gardens, New York 11415
                               (718) 520 1010
                               juanplata@aol.com

## STATEMENT OF FACTS

Plaintiff filed a wage claim now pending seeking payments for alleged unpaid wages, unpaid minimum wages, unpaid overtime wages, unpaid prevailing wages, unpaid supplemental benefits and other monies due plaintiff from defendants pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") and the New York Labor Law § 190, et seq. ("NYLL") and applicable contracts and agreements, plaintiff having work at construction sites at various locations within New York City.

Specifically, the plaintiff was employed by the defendants LINDEN TUDOR and LINTECH ELECTRIC, INC. (LINTECH) from approximately late October/early November 2014 until middle of September 2018. He worked as an electrician. His locations of work varied during that period of time. During the weekdays, Monday through Friday, plaintiff worked at locations consisting of properties owned, managed, operated by the NEW YORK CITY HOUSING AUTHORITY (NYCHA). He worked on Saturdays at NYCHA properties twice each month and on the other Saturdays and on Sundays at various other locations that he believes are not NYCHA properties. He generally worked starting at 8 AM and worked until sometimes 6 PM and sometimes 7 PM. He was paid in cash on a monthly basis in the sum of $700-$800.

HOLLY TUDOR and LINDEN TUDOR, husband and wife, have continuously lived at 109-70 133rd Street S Ozone Park New York for 30 years.. They purchased by it in 1988 with title as husband and wife. In 2003, for no apparent reason and for an unknown sum

which was not fair consideration or for no consideration at all, in 2003 the title to the marital residence was transferred solely to the name of HOLLY TUDOR.

On May 29, 1996 LINDEN TUDOR became the owner of commercial premises located at 1609 Nostrand Avenue/3006 Tilden Avenue in Brooklyn New York. For no apparent reason and for no reported consideration title to that property was transferred to the names of HOLLY TUDOR and LINDEN TUDOR on March 6, 1998.

On August 9, 2005 LINDEN TUDOR and HOLLY TUDOR and for no reported consideration executed a deed transferring title to those commercial premises back to LINDEN TUDOR.

Some four months later, on December 20, 2005, the defendant LINDEN TUDOR obtained a loan of $1,150,000.00 executing a note in that sum that was secured by a mortgage on those commercial premises.

On September 24, 2007 defendant LINDEN TUDOR executed a deed transferring title to those commercial premises to defendant TUDOR ENTERPRISE FAMILY LIMITED PARTNERSHIP.

The consideration for that 2007 transfer was reported on transfer documents signed by defendant LINDEN TUDOR to be $320,000.00. He also separately filed a conflicting and different transfer document that reported the consideration was $108,378.00.

The 2007 transfer was described by defendant LINDEN TUDOR as "A sale between related companies or partners in business." He executed documents in that September 2007 transfer as both transferor and transferee.

Defendant LINDEN TUDOR is the sole owner and stockholder of LINTECH ELECTRIC, INC. (LINTECH) which has been in business since 1995 providing electricians to work at construction sites mostly at public work sites of the NEW YORK CITY HOUSING AUTHORITY (NYCHA).

Plaintiff worked as an electrician for them. He was not a member of any union nor was he a licensed electrician. He was told by LINDEN TUDOR that he would get plaintiff into the union if he continued to work for him.

However, LINDEN TUDOR and LINTECH set the terms and conditions of plaintiff's work including hours, wages and days and those terms and conditions were in violation of statutes, rules and regulations applicable to his work as an electrician and the prevailing wage rules that apply to his work as an electrician on public construction projects. While he worked for LINDEN TUDOR and LINTECH, plaintiff should have receiving union wages or prevailing wages for most of his work but was not paid at such rates and was otherwise not paid what he should have been paid all as described in the pending lawsuit.

LINDEN TUDOR and LINTECH have no records that demonstrate they actually paid plaintiff a single check; have no records that they paid him the amounts of money they reported on the W2 statements they paid to the plaintiff; do not have a single sign in sheet signed by him.

In discovery in the pending wage claim, and after various directives from the Court, plaintiff was presented on April 13, 2020 with a dropbox containing defendants' reported records and documents including checks allegedly issued and paid to plaintiff (both sides), sign in sheets plaintiff is claimed to have signed, certain banking statements and certain wage reports.

Plaintiff has examined the checks produced with initials on the reverse side and the sign in sheets and states he never received any of those checks and that the initials on the reverse side are not his markings; the sign in sheets produced were not signed by him.

Of the approximately 60 checks provided, 51 checks are all marked with the same Post date of 1/26/17; those 51 checks contain notations about what work week each covers; check#2405 is for the week ending 1/2/16 ; check#2406 is for the week ending 12/19/15; check #2419 is for the week ending 9/3/16.

Those 51 checks cover work periods in 2015 and 2016.

There are 6 checks numbered between 2419 and 2426 that are each with Post date of 2/5/16 and 3 contain notations for work performed in 2015.

There are two checks numbered 2419 in differing amounts, different notations about the work week covered. The two checks look different from each other.

The checks on their reverse side simply contain initials but no other markings and nothing to indicate they were ever cashed or deposited.

The Brooklyn commercial property has been used by LINDEN TUDOR and LINTECH for business. Defendant LINDEN TUDOR at his first deposition (taken before the records from the dropbox were provided) testified that the business occupies a room 10' by 20' on the first floor that it shares with a bar known as HQ LOUNGE that has been there for 25 years.

Defendants have moved to dismiss the two pending fraudulent conveyance complaints under FRCP Rule 12(b)(6) alleging they fail to state a claim. The motion is dated April 24, 2020. Amended complaints were filed by the plaintiff on May 13, 2020.

FRAUDULENT CONVEYANCES

As numerous courts have noted, an intent to defraud a creditor through transfer of a property is difficult to prove. Most parties will never admit to any unfavorable inference from their real property transactions.

Faced with denunciations from alleged perpetrators, the New York courts have sought out "badges of fraud," which are circumstances that accompany fraudulent transfers so "commonly that their presence gives rise to an inference of intent." Ohana v Levy, 2015 N.Y. Misc. LEXIS 1834, 2015 NY Slip Op 30877 (Sup. Ct. Kings Cty. 2015); 5706 Fifth Ave., LLC v. Louzieh, 108 A.D.3d 589, 590, 969 N.Y.S.2d 141 (2nd Dept. 2013); see also Dempster v Overview Equities, 4 AD3d 495, 498, 773 N.Y.S.2d 71 (2nd Dept. 2004).

The "badges of fraud" from which fraudulent intent may be inferred include:

(1) a close relationship between the parties to the transaction;

(2) secrecy and haste in making the transfer;

(3) the inadequacy of consideration;

(4) the transferor's knowledge of the creditor's claim, or a claim so likely to arise as to be certain, and the transferor's inability to pay it; and,

(5) the retention of control of property by the transferor after the conveyance.

See Matter of Steinberg v Levine, 6 AD3d 620, 621, 774 N.Y.S.2d 810 (2nd Dept. 2004); Dempster v Overview Equities , 4 AD3d at 498; Board of Mgrs. of 14 Hope St. Condominium v Hope St. Partners, LLC, 40 Misc 40 Misc. 3d 1215[A], 975 NYS2d 708, 2013 NY Slip Op 51201[U] (Sup Ct, Kings Cty. 2013).

The Second Circuit has identified other examples of "badges," including

"the financial condition of the party sought to be charged both before and after the transaction in question,

the existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors," and

"the general chronology of events and transactions under inquiry."

Salomon v. Kaiser, 722 F2d 1574, 1582-83 (2nd Cir. 1983); Chapin Home for the Aging v. McKimm, 2014 U.S. Dist. LEXIS 132545( EDNY 2014).

Plaintiff need not establish all of the badges of fraud to give rise to an inference of intent, nor are all the badges necessarily relevant in every case. Chapin Home for the Aging v. McKimm, 2014 U.S. Dist. LEXIS 132545, supra. See also MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs., Co., 910 FSupp 913, 935 (SDNY 1995) ("depending on the context, badges of fraud will vary in significance, through the presence of multiple indicia will increase the strength of the inference"); Sharp Int'l Corp v. State Street Bank and Trust Co. (In re Sharp Int'l Corp), 302 B.R. 760, 784 (Bankr. EDNY. 2003) [**12] , aff'd, 403 F3d 43 (2nd Cir. 2005) ("Although the presence of any particular badge of fraud is by no means a prerequisite to a finding of actual intent to defraud, the badges of fraud appropriately focus the inquiry on the circumstances that suggest a conveyance was made with fraudulent intent, viz. with the purpose of placing a debtor's assets out of the reach of creditors.").

Intra-spousal transfers are not immune to the reach of the Debtor/Creditor Law which has been used to upend transfers between spouses and family members, if designed to avoid creditors. See Hohenrath v Wallach, 37 AD2d 248, 323 N.Y.S.2d 560 (2nd Dept. 1971);

Geltzer v. Borriello (In re Borriello), 329 B.R. 367 (Bk. EDNY 2005) (husband's transfer of one-half interest in the marital residence to his wife could be invalidated and the trustee could claim that value of the transfer from the wife); United States v. Carlin, 948 F Supp 271 (SDNY 1996); William J. Jenack Estate Appraisers and Auctioneers, Inc. v Rabizadeh, 131 AD3d 960, 16 N.Y.S.3d 581 (2nd Dept. 2015) (complaint stated cause of action [*18] when husband, faced with a judgment against him, transferred his interest in the marital residence to his wife); 5706 Fifth Ave., LLC v. Louajeh, 108 AD3d 589, 590, 969 N.Y.S.2d 141 (2nd Dept. 2013) ("badges of fraud" used to void a transfer between husband and wife). The ease and speed of transfer and other factors have heightened scrutiny by courts over these intra-family transfers without reasonable or fair consideration.

In the context of transfers among family members, "family affection...does not constitute fair consideration' for purposes of Debtor and Creditor Law." St. Teresa's Nursing Home v. Vuksanovich, 268 AD2d 421, 422, 702 N.Y.S.2d 92 (2nd Dept. 2000); Leonard Nursing Home, Inc. v. Kay, 2003 NY Slip Op 50623[U], 2003 NY Misc. LEXIS 201 (Sup. Ct. Saratoga Cty. 2003)

No doubt discovery may reveal further and more facts to support plaintiff's claims.

LINDEN TUDOR for no consideration gave title away to the Ozone Park marital home shared with his wife HOLLY TUDOR for 30 or so years and has continued to live there with her during the period 1995 to present during which he has conducted business as LINTECH. He no longer owns it and lives in it just as he has done for 30 years.

As to the Brooklyn commercial property on Tilden Avenue, he bought it in his own name, then added the name of his wife, then it went into the wife's name alone and then it went back to his name and then he used it to obtain a loan of $1,150,000.00 and then he transferred title to TUDOR ENTERPRISE FAMILY LIMITED PARTNERSHIP. As of now it is not in his name, who knows what interest he may have in it now or who else has an interest.

In the meantime, he sits in his 10' by 20" room conducting business as LINTECH.

As to the "badges of fraud, the transfer documents on file evidence that no consideration was some of his transfers of title, he continues to sit in his home and in his 10' by 20' office at the commercial building sharing the floor for the last 25 years with the HQ OUNGE, a bar.

He gave away to his wife his interests in the properties with whom he has a "close relationship" and for reasons we can only guess at, even giving it away then taking it back as if by whim.

At least 3 of of the 5 "badges" undisputably exist. The record also establishes his questionable pattern or course of conduct as well as the unexplained and seeming unexplainable chronology of events.

Discovery will no doubt reveal further information but, as of now, the apparent "badges" exist and are a substantial basis for the motion to be denied and for the parties to be directed to proceed with discovery.

DEBTOR AND CREDITOR LAW SECTION 276

Plaintiff's claim pursuant to Section 276 of the New York Debtor and Creditor Law alleging actual intent to hinder, delay or defraud present and future creditors was timely

commenced within two years from the date when the fraud was or should have been discovered, whichever is longer. Dowlings v. Homestead Creditors 88 AD3d 1226 ; CPLR Section 213 [8]CPLR 203 [g]; Citicorp Trust Bank, FSB v Makkas, 67 AD3d at 953-954; Ehrler v Cataffo, 42 AD3d at 425).

Plaintiff filed this claim after he stopped working in Fall of 2018. He had no reason to make inquiry about what fraudulent conveyances defendants may have engaged in before then. Once plaintiff engaged an attorney and the wage claim lawsuit was filed and defendant could not produce credible records as to plaintiffs employment, and the property records obtained established "badges" of fraud then and only then did it became apparent that a cause of action under Section 276 existed.

There are very material issues of fact as to when plaintiff learned or, in the exercise of reasonable diligence, should have learned of the alleged fraud. Debtor and Creditor Law § 276 ; See CPLR 203 [g]; Citicorp Trust Bank FSB v Makkas, 67 AD3d at 953-954; Ehrler v Cataffo, 42 AD3d at 425; Miller v Polow, 14 AD3d 368, 368, 787 NYS2d 319 2005).

The actions were timely filed.

MOTION TO DISMISS UNDER RULE 12(b)(6)

In a FRCP Rule 12(6) motion to dismiss the allegations of the complaint are to be taken as true. Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 174-75, 86 S. Ct. 347, 348, 15 L. Ed. 2d 247, 249 and n. 4 (1965); see also Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90, 96 (1974); 2A Moore's Federal Practice P 12.08. Construing the allegations favorably toward the pleader, a complaint will not be dismissed unless no interpretation of the facts would entitle plaintiff to relief. See 5

Wright & Miller, Federal Practice & Procedure § 1356. The established standard for judging the sufficiency of a complaint is as follows:

> "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Conley v. Gibson, 355 U.S. 41, 45-6, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80, 84 (1957). See also Clay v. Martin, 509 F.2d 109, 112 (2d Cir. 1975); Byram River v. Village of Port Chester, New York, 394 F. Supp. 618, 628-29 (S.D.N.Y.1975); Owens v. Housing Authority of City of Stamford, 394 F. Supp. 1267, 1270 (D. Conn.1975).

FRCP Rule 1 states that the federal rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." Rule 8(f) continues to instruct that "all pleadings shall be so construed as to do substantial justice." The principle of liberal construction of pleadings embodies the Federal Rules' fundamental design to preserve the substance of an action from failing because of irregularities and peccadilloes in form. 2A Moore's Federal Practice P 12.08 at 2274; P 8.34. See A. T. Brod & Co. v. Perlow, 375 F.2d 393, 398 (2d Cir. 1967). The Supreme Court has reiterated this principle:

> "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

citing Maty v. Grasselli Chemical Co., 303 U.S. 197, 58 S. Ct. 507, 82 L. Ed. 745 (1938). Conley v. Gibson, supra, 355 U.S. at 48, 78 S. Ct. at 103, 2 L. Ed. 2d at 86

The amended pleadings clearly set forth more than sufficient factual allegations (supported by document and records) to establish grounds for plaintiff's claims to move forward to discovery and then trial based on what else is learned before then.

## CONSIDERATION OF MATTERS OUTSIDE THE PLEADINGS

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

## AMENDED PLEADINGS

After defendant served their motion to dismiss under FRCP 12(b)(6) the plaintiff filed amended pleadings on May 13, 2020, within 21 days of the date of that motion and those amended pleadings are therefore timely filed under FRCP Rule 15. Specifically, Rule 15 (a) (1) (B) directs that such amended pleadings can be made as a matter of course.

Assuming arguendo that the amended pleadings were not filed timely, as a matter of course, still the "...Court should freely give leave when justice so requires," as it is "within the sound discretion of the district court to grant or deny leave to amend." Even when a motion to dismiss is granted, "'[i]t is the usual practice to allow leave to replead." Tannerite Sports, LLC v. NBCUniversal Media LLC, 135 F. Supp. 3d 219

If the Court does not consider the amended pleadings or does not consider the amended pleadings to have been filed as a matter of course under Rule 15 then it is respectfully requested that the Court grant leave to amend and/or leave to replead as the case may be.

## DEFENDANTS' RECORDS PRODUCED SO FAR

The documents already produced by defendants are incredible. 51 Checks for work done in 2015 and 2016 are all with Post Date of 1/26/17. They are not even in order of the weeks of work that they allegedly report. Some checks are with the same numbers but in differing amounts etc. Such records do not establish that defendants have conducted their relationship with plaintiff as an employee in any reasonable fashion and they have seemingly presented records that are illogical, internally inconsistent and just plain unbelievable.

## FURTHER DISCOVERY

No doubt there is more to uncover and that is another reason why the Court should not consider dismissal until such time as defendants can be deposed.

## CONCLUSION

The motion to dismiss should be denied, plaintiffs amended pleadings should be considered, to the extent necessary plaintiff should be granted leave to amend and/or replead to reflect what is alleged in those amended pleadings, discovery should go forward.

Dated: May 15, 2020

*[signature]*

JONATHAN SILVER ESQ (7924)
Attorney for Plaintiff
80-02 Kew Gardens Road, Suite 316
Kew Gardens, New York 11415
(718) 520-1010