**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

GURSEWAK SINGH                                     Case No.: 1:18-cv-05780

                               *Plaintiff,*

            *-against-*                              Hon. Magistrate Judge Lois Bloom

LINTECH ELECTRIC, INC., LINDEN J. TUDOR,

                               *Defendants.*
---------------------------------------------------------------X

GURSEWAK SINGH,

                              *Plaintiff,*

            *-against-*

HOLLY TUDOR, LINDEN TUDOR,

                              *Defendants.*
---------------------------------------------------------------X

GURSEWAK SINGH,

                              *Plaintiff,*

            *-against-*

HOLLY TUDOR, LINDEN TUDOR, TUDOR
ENTERPRISE FAMILY LIMITED PARTNERSHIP,

                              *Defendants.*
---------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR: (I) ATTORNEYS' FEES, COSTS, AND SANCTIONS**
**PURSUANT TO FED.R.CIV.P. 27(g)(3), 37(c) AND 28 U.S.C. § 1927; AND (II) TO**
**DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 37(b)**

                              **LEVIN-EPSTEIN & ASSOCIATES, P.C.**
                              Jason Mizrahi, Esq.
                              Joshua Levin-Epstein, Esq.
                              420 Lexington Avenue, Suite 2525
                              New York, NY 10170
                              *Attorneys for Defendants*

Dated: New York, New York
       January 8, 2021

## <u>TABLE OF CONTENTS</u>

Page

**TABLE OF AUTHORITIES** ......................................................................................... v

**PRELIMINARY STATEMENT** ................................................................................. 1

**RELEVANT BACKGROUND** ..................................................................................... 4

    I.   Procedural History ................................................................................... 4

        A.  The Instant Federal Court Action ............................................... 4

        B.  Defendants' Answer and the December 20, 2018 Initial Document Production.......... 5

        C.  The January 30, 2019 Initial Case Conference ............................ 6

        D.  Attorney Silver's March 15, 2019 Letter ..................................... 7

        E.  The March 26, 2019 and March 29, 2019 Discovery Status Conferences, and the Parties' Letter Motions ........................... 7

        F.  The June 27, 2019 Discovery Status Conference ........................ 9

        G.  The November 5, 2019 Settlement Conference ........................... 9

        H.  The September 22, 2020 Status Conference, and the Revelatory 2018 Talico W-2 .. 10

        I.  Defendants' October 16, 2020 Letter......................................... 10

        J.  The Court Indicated that Sanctions are Appropriate at the October 29, 2020 Conference ........................................... 11

    II.  Plaintiff and Attorney Silver's Discovery Violations ........................... 12

        A.  Defendants' December 20, 2018 Discovery Requests................ 12

        B.  Defendants' February 28, 2019 Supplemental Document Production ...................... 13

        C.  Defendants' March 4, 2019 Supplemental Document Production ............................ 14

        D.  Defendants' March 4, 2019 Discovery Deficiency Letter, and Plaintiff's Subsequent Document Production ....................... 14

        E.  Defendants' April 4, 2019 Supplemental Discovery Production................................ 15

i

F.  Plaintiff's First Set of Revised Responses to Defendants' Interrogatories ................ 16

G.  Attorney Silver's Representations Regarding Plaintiff's Language Capabilities ....... 16

H.  Defendants' September 23, 2019 Deposition ............................................................. 17

I.  Plaintiff's September 24, 2019 Deposition ................................................................ 17

J.  Plaintiff's October 4, 2019 Deposition .................................................................... 17

K.  Defendants' Additional Supplemental Discovery Productions ................................ 18

L.  Defendants' Revelatory September 15, 2020 Supplemental Discovery Production of the 2018 Talico W-2 ................................................................................................. 19

M.  Defendants' September 21, 2020 Deficiency Letter ................................................. 19

N.  Attorney Silver's One (1) Page Supplemental Document Production ....................... 19

O.  Defendants' October 8, 2020 Deficiency Letter ...................................................... 20

P.  Attorney Silver's Revelatory 115-Page Document Production ................................ 20

III.  Plaintiff and Attorney Silver's Frivolous State Court Lawsuits Against Defendants ....... 21

A.  The State Court Actions, and the *Lis Pendens* Against Mr. Tudor's Residential Home and Commercial Property ......................................................................................... 22

IV.  Attorney Silver's Representation of Different Plaintiffs Against Talico .......................... 22

A.  Plaintiff's Counsel Files another FLSA Lawsuit Against Talico Contracting Inc. .... 22

B.  Attorney Silver Attempts to Withdraw from the Talico Action ............................... 23

C.  The Voluntary Dismissal of the Talico Action ........................................................ 25

**LEGAL STANDARD** .................................................................................................... **26**

I.  Sanctions Under Fed.R.Civ.P. 26(g)(3) .................................................................... 26

II.  Sanctions Under Fed.R.Civ.P. 37(c) ......................................................................... 27

III.  Sanctions Under 28 U.S.C. § 1927 and the Court's Inherent Authority ..................... 28

IV.  Sanctions Under Fed.R.Civ.P. 37(b) .......................................................................... 28

**ARGUMENT** ................................................................................................. **29**

I.   Defendants are Entitled to Sanctions Under Fed.R.Civ.P. 26(g)(3) ................................. 29

    A.   Plaintiff's Failure to Truthfully Respond to Defendants' Discovery Requests was not "Substantially Justified" ................................................................. 30

        i.   Plaintiff was in Possession of the Requested Discovery ...................................... 30

        ii.   There are Serious Questions Regarding Attorney Silver's Efforts to Communicate with his Client ................................................................. 31

        iii.   Plaintiff's Counsel Ignored Multiple Warnings Concerning Plaintiff's Actual Employer ................................................................. 32

II.   Defendants are Entitled to Sanctions Under Fed.R.Civ.P. 37(c) ....................................... 33

    A.   Plaintiff and Attorney Silver Had an Obligation to Timely Produce Employment Records Pursuant to Fed.R.Civ.P. 26(a) and (e) ........................................... 33

    B.   Plaintiff and Attorney Silver's Culpable State of Mind ...................................... 33

    C.   The Withheld Evidence is Highly Relevant and Material ...................................... 34

III.   Defendants are Entitled to an Order Dismissing the Federal Court Action Under Fed.R.Civ.P. 37(b)(2)(a) ................................................................. 35

    A.   Factor One – Willfulness ................................................................. 35

        i.   Plaintiff Repeatedly Failed to Respond to Defendants' Discovery Requests ....... 35

        ii.   Plaintiff Failed to Comply with Clear and Unambiguous Court Orders ............. 35

        iii.   Plaintiff's Non-Compliance is not Due to Factors Beyond His Control ............. 36

    B.   Factor Two – Efficacy of Lesser Sanctions ................................................... 37

    C.   Factor Three – Duration of Non-Compliance ................................................... 38

    D.   Factor Four – Knowledge of the Consequences of Non-Compliance ....................... 38

IV.   Defendants are Entitled to Sanctions Against Attorney Silver Under 28 U.S.C. § 1927 and the Court's Inherent Authority ................................................................. 40

    A.   The Filing and Prosecution of the Federal Action Lacked a Colorable Basis ........... 40

B.  Plaintiff's Counsel's Bad-Faith is Clear ....................................................... 40

   i.   Withholding Critical Evidence for over Two years, in Defiance of Fed.R.Civ.P.
        and Multiple Court Orders ...................................................................... 41

   ii.  Making Material Misrepresentations to the Court ................................................. 41

**CONCLUSION** ...................................................................................................... **42**

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories, et al., v. Adelphia Supply USA, et al*,
  2020 WL 1429472 (E.D.N.Y. 2020)................................................................ 37

*Bellinger v. Astrue*,
  2007 WL 2907320 (E.D.N.Y. 2007).............................................................. 35

*Borsanyi v. Huggins*,
  2019 WL 4911188 (E.D.N.Y. 2019).............................................................. 27

*Chowdhury v. Hamza Express Food Corp.*,
  308 F.R.D. 74 (E.D.N.Y. 2015)...................................................................... 39

*Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
  602 F.2d 1062 (2d Cir. 1979)......................................................................... 31

*Daval Steel Prods. v. M/V Fakredine*,
  951 F.2d 1357 (2d Cir. 1991)............................................................. 28, 29, 38

*Eisemann v. Greene*,
  204 F.3d 393 (2d Cir. 2000)........................................................................... 28

*In re September 11th Liab. Ins. Coverage Cases*,
  243 F.R.D. 114 (S.D.N.Y. 2007).................................................................... 33

*Isigi v. Harry's Nurses Registry, Inc.*,
  2017 WL 4417659 (E.D.N.Y. 2017).............................................................. 39

*Jindan Wu v. Seoul Garden, Inc.*,
  2018 WL 507315 (E.D.N.Y. 2018)................................................................ 27

*JMC Rest. Holding, LLC v. Pevida*,
  2016 WL 3351007 (E.D.N.Y. 2016).............................................................. 28

*Kiobel v. Royal Dutch Petroleum Co.*,
  2009 WL 1810104 (S.D.N.Y. 2009)........................................................ 26, 27

*Kosher Sports, Inc. v. Queens Ballpark Co., LLC*,
  2011 WL 3471508 (E.D.N.Y. 2011).............................................................. 26

*Kramer v. Am. Int'l Indus.*,
  2015 WL 6118254 (E.D.N.Y. 2015).............................................................. 35

*Lodge v. United Homes, LLC*,
    787 F. Supp. 2d 247 (E.D.N.Y. 2011) ........................................................................... 27

*Lopez v. Cajmant LLC*,
    2016 WL 7017361 (E.D.N.Y. 2016)............................................................................... 29

*Markey v. Lapolla Indus., Inc.*,
    2015 WL 5027522 (E.D.N.Y. 2015)............................................................................... 26

*Martinez v. City of New York*,
    2018 WL 604019 (E.D.N.Y. 2018)............................................................................ 39, 40

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees and Rest, Employees Int'l Union*,
    212 F.R.D. 178 (S.D.N.Y. 2003) .................................................................................. 26

*Prendergast v. Hobart Corp.*,
    2010 WL 3199699 (E.D.N.Y. 2010)............................................................................... 35

*Ravenell v. Avis Budget Grp., Inc.*,
    2012 WL 1150449 (E.D.N.Y. 2012)............................................................................... 38

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*,
    194 F.3d 323 (2d Cir. 1999).................................................................................... 40, 41

*Scottsdale Ins. Co. v. United Indus. & Constr. Corp.*,
    2014 WL 12834839 (E.D.N.Y. 2014)................................................................... 31, 34, 36

*Silverman & Silverman, LLP v. Pacifica Found.*,
    2014 WL 3724801 (E.D.N.Y. 2014)............................................................................... 39

*Update Art, Inc. v. Modiin Publ'g, Ltd.*,
    843 F.2d 67 (2d Cir. 1988).......................................................................................... 28

*Vargas v. Jet Peru-Courier Corp.*,
    2018 WL 1545699 (E.D.N.Y. 2018)........................................................................... 35, 38

*Xin Hao Liu v. Millenium Motors Sports*, LLC,
    2020 WL 7028924 (E.D.N.Y. 2020).............................................................................. 37

## Statutes

29 C.F.R. § 3.3 .............................................................................................................. 5

Fed.R.Civ.P. 26(g)(1)................................................................................................ 26, 30

Fed.R.Civ.P. 26(g)(3)..............................................................................................27

Fed.R.Civ.P. 33(b) ..................................................................................................8

Fed.R.Civ.P. 37(a)(5)(A) .......................................................................................27

Fed.R.Civ.P. 37(b)(2)(A) .......................................................................................28

Fed.R.Civ.P. 37(c)(1)........................................................................................27, 33

Defendants Lintech Electric, Inc. (the "Lintech"), and Linden J. Tudor ("Mr. Tudor", and together with Lintech, the "Defendants"), by and through the undersigned counsel, Levin-Epstein & Associates, P.C., respectfully submit this Memorandum of Law, and the Affirmation of Jason Mizrahi, Esq. (the "Mizrahi Aff.") and the exhibits annexed thereto, in support of Defendants' motion: (i) for an award of attorneys' fees, costs, and sanctions pursuant to pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 26(g)(3), 37(c), 28 U.S.C. § 1927, and the Court's inherent authority; and (ii) to strike Plaintiff's Complaint filed on October 16, 2018 (the "Complaint") pursuant to Fed.R.Civ.P. 37(b) (the "Motion for Sanctions"), and as grounds thereto respectfully state as follows:

## PRELIMINARY STATEMENT

Since the proverbial Day 1 – at the January 30, 2019 Initial Case Conference – Plaintiff and his counsel Jonathan Silver, Esq. ("Attorney Silver") have deliberately concealed and misrepresented critical facts regarding Plaintiff's employment history. Defendants placed Plaintiff's material misidentification of his employers front and center before the Court at the Initial Case Conference, as recognized by this Court:

| 01/30/2019 | 12 | Minute Entry: Initial Conference Hearing held on 1/30/2019 before Magistrate Judge Steven M. Gold. Silver for plaintiff, Mizrahi for defendants. Defendants will promptly produce information about the entity they contend was plaintiff's actual employer, together with any documents readily available that corroborate that contention. The parties will continue with paper discovery thereafter. **Plaintiff will file either an amended complaint, on consent, or submit a written status report indicating how he intends to proceed with this action, by March 22, 2019**. (Gillespie, Saudia) (Entered: 01/30/2019) |

[Dckt. No. 12] (emphasis added).

Thus, from the very first conference, ***nearly two years ago***, Plaintiff and Attorney Silver had knowledge that Plaintiff's actual employers during the relevant period had been materially misidentified and placed in question.

Notwithstanding the Court's admonishment at the Initial Case Conference, Plaintiff and Attorney Silver deliberately concealed and misrepresented material facts regarding Plaintiff's employment history, *for over two years*. In flagrant violation of the Fed.R.Civ.P. discovery protocols and this Court's Order dated January 30, 2019, June 27, 2019 and September 22, 2020 Order withheld material tax documents under Plaintiff's control pertaining to the identification of Plaintiff's employers during the relevant period. The Court's June 27, 2019 Order set forth as follows:

| 06/27/2019 | [23] | Minute Order: Motion Hearing held on 6/27/2019 before Magistrate Judge Steven M. Gold. Silver for plaintiff, Mizrahi for defendants. The parties' discovery motions [20] are granted in part and denied in part for the reasons stated on the record…**Plaintiff will, by July 18, 2019, confirm in writing that no document or information has been withheld based upon the general objections and privilege assertions made in response to defendants' document demands and interrogatories or, if information or documents were withheld on privilege grounds, provide a privilege log and, if withheld on other grands, submit a letter explaining those grounds.** (FTR Log #2:37-2:57.) (Gillespie, Saudia) (Entered: 06/28/2019) |
|---|---|---|

[Dckt. No. 23] (emphasis added).

Nearly *two years* after the commencement of the instant action, and nearly *one-and-a-half years* after this Court's Order dated June 27, 2019, on October 13, 2020, Plaintiff finally supplemented his responses and objections to Defendants' discovery requests propounded on December 20, 2018, requesting, *inter alia*, Plaintiff's W-2 and 1099 tax forms. Astonishingly, Plaintiff's supplemental document production included **one hundred and fifteen (115) individual pages**, never before produced, despite multiple demands, consisting of, *inter alia*:

1. 2014 IRS Form W-2 Statements from "Sharan Builders Inc." issued to Plaintiff;

2. 2014 IRS Form W-2 Statements from "Talico Contracting Inc." issued to Plaintiff;

3. 2015 IRS Form W-2 Statements from "Neelam Construction Corporation." issued to Plaintiff;

4.  2015 IRS Form W-2 Statements from "Talico Contracting Inc." issued to Plaintiff;

5.  2015 IRS Form W-2 Statements from "RSN Construction Co. Inc." issued to Plaintiff;

6.  2016 IRS Form W-2 Statements from "Talico Contracting Inc." issued to Plaintiff;

7.  2016 IRS Form W-2 Statements from "Lakhi General Contractor Inc." issued to Plaintiff;

8.  2016 IRS Form 1099-MISC Statements from "Unter, LLC" issued to Plaintiff;

9.  2016 IRS Form 1099-MISC Statements from "Uber Technologies, Inc." issued to Plaintiff;

10. Plaintiff's 2016 Personal IRS Tax Returns, containing representations that Plaintiff's "principal business or profession" was a "Taxi Limo Service."

11. 2017 IRS Form 1099-MISC Statements from "Uber Technologies, Inc." issued to Plaintiff;

12. 2017 IRS Form W-2 Statements from "S & N Builders, Inc." issued to Plaintiff;

13. 2017 IRS Form W-2 Statements from "Talico Contracting Inc." issued to Plaintiff;

14. Plaintiff's 2017 Personal IRS Tax Returns, containing representations that Plaintiff's "principal business or profession" was a "Taxi Limo Service."

15. Plaintiff's 2018 Personal IRS Tax Returns, containing representations that Plaintiff's "principal business or profession" was a "Taxi Operator."

16. Plaintiff's 2018 Personal IRS Tax Returns, containing representations that Plaintiff was issued a W-2 by "Metropolitan Construction Corp."

17. Plaintiff's 2018 Personal IRS Tax Returns, containing representations that Plaintiff was issued a W-2 by "Talico Contracting Inc."

Having produced the above-referenced documents nearly ***two years*** after the commencement of this case and nearly ***one-and-a-half years*** after this Court's Order dated June 27, 2019, Plaintiff and his counsel have frustrated the discovery process to the extent that the entire discovery process would have to re-start in earnest.  Plaintiff and his counsel's violation of this Court's discovery Orders dated January 30, 2019, June 27, 2019 and September 22, 2020 and the

Fed.R.Civ.P. discovery protocols have effectively destroyed Defendants' two depositions of Plaintiff as well as all the discovery efforts in this case. This has been a colossal loss, as recognized by this Court.

Before setting a briefing schedule on the instant Motion for Sanctions, the Court stated that Attorney Silver and Plaintiff lacked credibility, that Defendants should be reimbursed attorneys' fees since the filing of the Complaint for Plaintiff and Attorney Silver's misconduct, and threatened dismissal of the instant Federal Court Action. *Mizrahi Aff* at ¶ 13 [Ex. J at 5:4-18; 5:21-25; 6:1-4] [October 29, 2020 Transcript].

As a result of Plaintiff and Attorney Silver's violation of the Fed.R.Civ.P. discovery protocols and this Court's January 30, 2019, June 27, 2019 and September 22, 2020 Orders, sanctions are warranted under the independent bases of Fed.R.Civ.P. 26(g)(3), 37(b), 37(c), 28 U.S.C. § 1927, and the Court's inherent authority.

## RELEVANT BACKGROUND

**I.    Procedural History**

**A. The Instant Federal Court Action**

On October 16, 2018, Plaintiff commenced the instant action (the "Federal Court Action") against Linden J. Tudor and Lintech Electric, Inc. to recover alleged unpaid minimum wages, unpaid overtime wages, unpaid prevailing wages, and unpaid supplemental benefits, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the New York Labor Law § 190, *et seq*. ("NYLL"). In the Federal Court Action, Plaintiff alleges to have started working, full-time, at Lintech in or around "**late October/early November 2014 until middle of September 2018**" as an "electrician". *Mizrahi Aff*. at ¶ 3 [Ex. A at ¶ 8] [Complaint] (emphasis added). Plaintiff alleges to have worked full-time at Lintech for four (4) years, six (6) to seven (7) days a week, ten (10) to eleven (11) hours per day, for an average of **sixty (60) to seventy-seven (77) hours per**

**week**. *Id*. (emphasis added). Plaintiff alleges that for these four years, he was paid a monthly cash salary of $700 - $800. *Id*.

As set forth more fully below, the material factual allegations in the Complaint are demonstrably false and the Federal Court Action was filed and prosecuted in bad faith.

**B. Defendants' Answer and the December 20, 2018 Initial Document Production**

On December 20, 2018, Defendants appeared in the Federal Court Action, and filed their Answer with Affirmative Defenses denying the material allegations of the Complaint. [Dckt. Nos. 7-9]. Immediately upon appearing in the Federal Court Action, Defendants served their Fed.R.Civ.P. 26(a) Initial Disclosures. *Mizrahi Aff*. at ¶ 4 [Ex. B] [December 20, 2018 Email].

Defendants' initial document production consisted of, *inter alia*, (i) United States Department of Labor ("U.S. DOL") Forms WH-347, certifying Plaintiff's hours worked and wages paid pursuant to 29 C.F.R. § 3.3[1]; (ii) daily time records, **signed and dated by Plaintiff**; and (iii) paystubs issued to Plaintiff.  *Id*.

Defendants' December 20, 2018 initial document production demonstrated that Plaintiff worked as a part-time worker at Lintech and was paid an hourly prevailing wage rate for all hours worked, on a weekly basis, and received payments in the form of checks. *Id*. Defendants' December 20, 2018 initial document production undermined the main factual allegations in the Complaint concerning hours worked, given that Plaintiff himself had signed daily time record sign-

---

[1] 29 C.F.R. § 3.3 ("Weekly Statement with Respect to Payment of Wages"), states in pertinent part that:

> Each contractor or subcontractor engaged in the construction, prosecution, completion, or repair of any public building…shall furnish each week a statement with respect to the wages paid each of its employees…during the preceding weekly payroll period.  This statement shall be executed by the contractor or subcontractor or by an authorized officer or employee of the contractor or subcontractor who supervises the payment of wages, and shall be on the back of Form WH 347…

*Id*. § 3.3(b).

in sheets and endorsed checks for deposit. *Id.* This should have placed Plaintiff and Attorney Silver on alert that the Complaint contained material factual misrepresentations.

### C. The January 30, 2019 Initial Case Conference

On January 30, 2019, the parties appeared before the Honorable Magistrate Judge Steven M. Gold for an Initial Case Conference (the "Initial Case Conference"). [Dckt. No. 12]. At the Initial Case Conference, Defendants' counsel, Jason Mizrahi, Esq., explained that Plaintiff's allegations of a 60- to 77-hour workweek, spanning over four (4) years, were grossly exaggerated, and refuted by substantial documentary evidence, *to wit*: Defendants' December 20, 2018 initial document production. *Mizrahi Aff.* at ¶ 5. Defendants' counsel further explained that Plaintiff only worked as a part-time worker at Lintech on various NYCHA projects, and was paid an hourly prevailing wage rate for all hours worked, on a weekly basis. *Id.* Defendants' counsel further explained that one of Plaintiff's many *actual employers* during the relevant period was Talico Contracting Inc. ("Talico"), a scaffolding company that worked alongside Lintech on various NYCHA housing projects as a co-subcontractor, under Neelam Construction Corporation ("Neelam"), as the general contractor. *Id.* In response, Attorney Silver represented that he did not possess any information or knowledge regarding Plaintiff's employment with Talico, Neelam, or any other employer. *Id; see also id.* at ¶ 13 [Ex. J at 5:4-18] [October 29, 2020 Transcript].

Following the Initial Case Conference, the Court entered the following Order:

| 01/30/2019 | 12 | Minute Entry: Initial Conference Hearing held on 1/30/2019 before Magistrate Judge Steven M. Gold. Silver for plaintiff, Mizrahi for defendants. Defendants will promptly produce information about the entity they contend was plaintiff's actual employer, together with any documents readily available that corroborate that contention. The parties will continue with paper discovery thereafter. **Plaintiff will file either an amended complaint, on consent, or submit a written status report indicating how he intends to proceed with this action, by March 22, 2019**. (Gillespie, Saudia) (Entered: 01/30/2019) |

[Dckt. No. 12] (emphasis added).

As set forth more fully below, Attorney Silver's representations at the Initial Case Conference, **nearly two years ago**, were materially false, and made in bad faith.

### D.  Attorney Silver's March 15, 2019 Letter

On March 15, 2019, Attorney Silver filed a letter in response to the Court's January 30, 2019 Order, stating:

> "**Frankly**, **it is presently a guessing game to figure out who other than defendant was the 'real employer…'**
>
> I do not see that plaintiff has as of yet sufficient information to add defendants alleging them to be plaintiff's employers… My thought is that I will also need to depose Mr. Lintech [sic] so that more information can be obtained from him about the 'real employer'… perhaps then there will be a more definitive answer to who, if anyone, should be added as additional defendant [sic]."

*Mizrahi Aff.* at ¶ 6 [Ex. C] [March 15, 2019 Letter] [Dckt. No. 13] (emphasis added).

As set forth more fully below, Attorney Silver's representations were materially false, and made in bad faith.

### E.  The March 26, 2019 and March 29, 2019 Discovery Status Conferences, and the Parties' Letter Motions

On March 26, 2019, and March 29, 2019, respectively, the Court held telephonic conferences regarding the central issue of Plaintiff's part-time employment at Lintech, and his employment with other employers between 2014 and 2018. [*See* Dckt. Nos. 12, 15, 17].

In a letter motion filed on April 5, 2019, Attorney Silver stated:

> "As the Court will be reminded, an issue was raised as to whether plaintiff should add other parties to the action based on statements made concerning [plaintiff's actual employer].
>
> **It would be guesswork at this time on the part of the plaintiff to just add other parties having been provided with no supporting documentation to establish any basis to claim them to be plaintiff's employers**."

*Mizrahi Aff.* at ¶ 7. [Ex. D] [April 5, 2019 Letter] [Dckt. No. 18] (emphasis added).

Attorney Silver's April 5, 2019 Letter placed the evidentiary burden on Defendants to ascertain information concerning Plaintiff's employment during the relevant period.

7

As set forth more fully below, Attorney Silver's representations were materially false, and made in bad faith because, at all relevant times, Plaintiff and Attorney Silver had control over tax information that clearly identified Plaintiff's other employers during the relevant period.

On April 12, 2019, Defendants filed a letter motion in response to Plaintiff's April 5, 2019 letter, and to compel Plaintiff to remedy certain discovery deficiencies. *Mizrahi Aff.* at ¶ 8 [Ex. E] [April 12, 2019 Letter] [Dckt. No. 20]. Defendants' April 12, 2019 letter motion explained:

> "**As discussed in the January 30, 2019 initial case conference** before Your Honor, Plaintiff's allegations are simply not credible, and are refuted by substantial evidence.
>
> To date, Defendants have produced over 330 documents to provide Plaintiff with sufficient information to amend his Complaint, and plead the necessary parties in this action. The payroll and time records show that Plaintiff's engagement with Defendants was limited to part-time services performed in connection with NYCHA projects. Defendants explained that **Plaintiff's actual employer was a bridge contracting company – Talico Contracting Inc. – who serves as a subcontractor alongside Lintech Electric Inc**."

*Id*. (emphasis added).

Defendants' April 12, 2019 letter motion also raised two glaring issues with Plaintiff's responses to Defendants' discovery requests: (i) Plaintiff's failure to verify responses to interrogatories pursuant to Fed.R.Civ.P. 33(b)[2]; and (ii) the possibility that Plaintiff was withholding materially relevant information and documents in his possession, custody and control, by asserting general objections in violation of Fed.R.Civ.P. 24 and LCR 26.2. *Id*.

On April 18, 2019, Attorney Silver filed a letter in response to Defendants' April 12, 2019 letter motion. *Mizrahi Aff.* at ¶ 9 [Ex. F] [April 18, 2019 Letter] [Dckt. No. 21]. In his reply letter Attorney Silver stated:

> "Frankly, this office cannot rely on mere representations of defendants or their counsel that Talico is a proper party."

*Id.*

---

[2] Fed.R.Civ.P. 33(b) requires interrogatories to "be answered…by the party to whom they are directed," and "must, to the extent it is not objected to, be **answered separately and fully in writing under oath**." Fed.R.Civ.P. 33(b)(1)(a), (b)(3) (emphasis added).

This is an absurd response. As set forth more fully below, Attorney Silver's representations were, once again, materially false, and made in bad faith.

### F.   The June 27, 2019 Discovery Status Conference

On June 27, 2019, following two (2) adjournment requests[3] by Attorney Silver, the Court held a telephonic status conference on the parties' dueling letter motions. [Dckt. No. 23]. Following the telephonic conference, the Court ordered Plaintiff to: "confirm in writing that no document or information has been withheld" in response to Defendants' Discovery Requests. *Id.* The Court also scheduled a settlement conference for September 19, 2019, "**WITH PRINCIPALS WITH FULL SETTLEMENT DECISION-MAKING AUTHORITY…PRESENT THROUGHOUT THE CONFERENCE**" (the "Settlement Conference"). *Id.* (emphasis in original).

In response to the Court's June 27, 2019 Order, Attorney Silver produced a letter to Defendants on July 17, 2019, affirmatively representing that:

> "Plaintiff confirms that no document or information has been withheld based upon the general objections and privilege assertions made in response to defendants' document demands and interrogatories."

> *Mizrahi Aff.* at ¶ 10 [Ex. G] [July 17, 2019 Letter].

As set forth more fully below, Attorney Silver's representations were, once again, materially false, and made in bad faith.

### G.  The November 5, 2019 Settlement Conference

On November 4, 2019, in preparation for the Court-ordered Settlement Conference, Defendants' counsel, via email, asked Attorney Silver to confirm that he had made

---

[3] *See* Dckt. No. 19 [advising the Court that Plaintiff's counsel was taking a "one (1) week vacation to Barbados"] and Dckt. No. 22 [advising the Court that "counsel has been discussing…issues raised by defendants that other parties need to be brought in as parties defendant [sic] at this time."]

accommodations to have a Punjabi interpreter present at the upcoming Settlement Conference to accommodate Plaintiff's language requirements. *Mizrahi* Aff. at ¶ 11 [Ex. H] [November 4, 2019 Email]. Attorney Silver ignored the request. *Id*. Defendants' counsel appeared at the Settlement Conference with Mr. Tudor. *Id*. Despite having more than four (4) months' notice, Attorney Silver failed to produce Plaintiff at the Settlement Conference, rendering it essentially useless. *Id*. At the Settlement Conference, and in subsequent Court filings, Attorney Silver admitted he had no excuse for his client's nonappearance. *Id*.; [*see also* Dckt. No. 46].

Attorney Silver's failure to produce Plaintiff at the Settlement Conference raises serious questions about his efforts to conceal material information from the Court.

### H.  The September 22, 2020 Status Conference, and the Revelatory 2018 Talico W-2

At the September 22, 2020 status conference, Defendants' counsel informed the Court that it had recently come into possession of a 2018 IRS Form W-2 Statement from Talico issued to Plaintiff. [*See* Dckt. No. 88].  In response, Attorney Silver affirmatively represented, on the record, that his client did not intend to supplement any additional documentary responses. *Id*. In light of the newly discovered evidence, the Court extended the fact discovery deadline to December 15, 2020, and ordered Plaintiff to "respond to [D]efendants' discovery demands by October 5, 2020." *Id*.

As set forth more fully below, Attorney Silver's representations at the September 22, 2020 conference were, once again, materially false, and made in bad faith.

### I.  Defendants' October 16, 2020 Letter

On October 16, 2020, Defendants filed a letter informing the Court that, ***two years after the commencement of the Federal Court Action***, Defendants had unearthed 115-pages of tax records, evidencing Plaintiff's employment with as many as ***nine (9)*** other companies, *to wit*:

Talico Contracting Inc. *Mizrahi Aff.* at ¶ 12 [Ex. I] [October 16, 2020 Letter] [Dckt. No. 89]. Defendants explained Plaintiff and Attorney Silver materially mislead the Court, and Defendants, by withholding this information. *Id*. Attorney Silver never responded to Defendants' October 16, 2020 letter motion. *Id*. A telephonic conference was subsequently scheduled for October 29, 2020. [*See* October 20, 2020 Scheduling Order].

**J. The Court Indicated that Sanctions are Appropriate at the October 29, 2020 Conference**

At the October 29, 2020 conference, the Court noted Plaintiff's failure to respond to the "remarkable revelations" contained in Defendants' October 16, 2020 letter motion, and pressed Attorney Silver to explain why "critical" information concerning Plaintiff's employment history was not produced immediately after the Initial Case Conference. *Mizrahi Aff.* at ¶ 13 [Ex. J at 2:7-25] [October 29, 2020 Transcript].

In response, Attorney Silver stated, on the record, that he had no prior knowledge of Plaintiff's employment with Talico Contracting Inc., and that Plaintiff previously testified at his deposition that he "worked for Uber". *Id*. [Ex. J at 3:2-5; 4:14-17, 5:1-3] [October 29, 2020 Transcript]. Attorney Silver shifted blame to Plaintiff for failing to produce W-2s and Federal and State tax returns at the outset of the action. *Id*. [Ex. J at 3:9-13] [October 29, 2020 Transcript].

Astonishingly, even after the revelatory 115-page production was unearthed, Attorney Silver doubled-down on his false narrative that during the relevant period Plaintiff exclusively performed work as "electrical work" for Lintech. *Id*. [Ex. J at 3:20-24] [October 29, 2020 Transcript].

As set forth more fully below, Plaintiff's counsel's representations were, once again, materially false, and made in bad faith.

Before setting a briefing schedule on the instant Motion for Sanctions, the Court stated that Attorney Silver and Plaintiff lacked credibility, that Defendants should be reimbursed attorneys' fees since the filing of the Complaint for Plaintiff and Attorney Silver's misconduct, and threatened dismissal of the instant Federal Court Action. *Id*. [Ex. J at 5:4-18; 5:21-25; 6:1-4] [October 29, 2020 Transcript].

## II.     Plaintiff and Attorney Silver's Discovery Violations

Set forth below is the relevant factual background of Plaintiff and Attorney Silver's failure to comply with basic discovery requests and this Court's Orders pertaining to discovery. As shown below, Plaintiff and Attorney Silver's failure to timely turn over Federal and State tax filings has destroyed all of Defendants' discovery efforts in this case, and needlessly ratcheted-up Defendants' costs and attorneys' fees.

### A.  Defendants' December 20, 2018 Discovery Requests

Immediately upon appearing in the Federal Court Action, Defendants served Attorney Silver with discovery requests consisting of: (i) Defendants' First Request for Production of Documents; (ii) Defendants' Interrogatories; and a (iii) Notice of Deposition for Plaintiff (collectively, "Defendants' Discovery Requests"). *Id*. at ¶ 4 [Ex. B] [December 20, 2018 Email].

Of critical importance, Defendants' First Request for the Production of Documents propounded, *inter alia*, the following:

**DOCUMENT REQUEST NO. 6:**

All Documents that set forth, describe, relate or refer to any payment, money or thing of value transferred from [Talico] Contracting Inc., a New York corporation…to Plaintiff from October 2014 to the present.

**DOCUMENT REQUEST NO. 14:**

Copies of Plaintiff's Federal and State Tax Returns for the years 2014 to present.

**DOCUMENT REQUEST NO. 15:**

All IRS form W-2's and/or 1099's received by Plaintiff from the years 2014 to present.

**DOCUMENT REQUEST NO. 18:**

All Documents that set forth, describe, relate or refer to any positions of employment held by Plaintiff from January 1, 2014 to present…

**DOCUMENT REQUEST NO. 19:**

All Documents that set forth, describe, relate or refer to any instances in which Plaintiff provided services for any person, organization, institution, company, corporation, business, or other entity other than Defendants from January 1, 2014, through the present…

*Id*. at ¶ 14 [Ex. K-1] [Defendants' First Request for the Production of Documents].

As set forth more fully below, ***Plaintiff withheld these documents for nearly two years***, in violation of this Court's January 30, 2019, June 27, 2019 and September 22, 2020 Orders, and despite repeated demand. [*See* Dckt. Nos. 12, 23, 88].

### B. Defendants' February 28, 2019 Supplemental Document Production

Following the Initial Case Conference, on February 28, 2019, Defendants served Plaintiff's counsel with responses and objections to Plaintiff's discovery requests as well as a courtesy link to the Dropbox folder containing Defendants' supplemental document production. *Mizrahi Aff*. at ¶ 15 [Ex. L] [February 28, 2019 Email].

Defendants' February 28, 2019 supplemental document production consisted of additional (i) U.S. DOL Forms WH-347, certifying Plaintiff's hours worked and wages paid pursuant to 29 C.F.R. § 3.3; (ii) daily time records, signed and dated by Plaintiff; and (iii) paystubs issued to Plaintiff. *Id*. This documentary information materially undermined the factual allegations contained in the Complaint.

### C.  Defendants' March 4, 2019 Supplemental Document Production

Pursuant to the Court's directive at the Initial Case Conference [Dckt. No. 12], on March 4, 2019, Defendants' counsel emailed Attorney Silver information about Plaintiff's actual employer. *Id.* at ¶ 16. [Ex. M] [March 4, 2019 Email]. Defendants' counsel explained:

> Jonathan,
>
> As I mentioned during the initial case conference – the Plaintiff's correct employer is TALICO CONTRACTING INC. Their entity information listed on the Secretary of State's site, as of today is:
>
> MANDEEP KAUR
> 133-10 ROCKAWAY BLVD.
> SOUTH OZONE PARK, NEW YORK, 11420
>
> Talico is also a sub-contractor for NEELAM CONSTRUCTION CORPORATION, who was the General Contractor. Their entity information, as per the Secretary of State's website, is:
>
> KANTI BHANDERI
> 163 A PARIS AVE
> NORTHVALE, NEW JERSEY, 07647

*Id.* Plaintiff ignored Defendants' March 4, 2019 email. *Id.*

Further aggravating matters, as set forth more fully below, Attorney Silver filed a separate wage-and-hour lawsuit against, *inter alia*, Talico Contracting Inc., Neelam Construction Corporation, and Mandeep Kaur, after receiving this information. Thus, Attorney Silver had knowledge about Talico Contracting Inc., Neelam Construction Corporation, and Mandeep Kaur for nearly ***two years***.

### D.  Defendants' March 4, 2019 Discovery Deficiency Letter, and Plaintiff's Subsequent Document Production

On March 4, 2019, Defendants also served Plaintiff with a deficiency letter pursuant to Local Civil Rule ("LCR") 37.3(a), for Plaintiff's failure to respond to Defendants' Discovery

Requests (the "First Deficiency Letter"). *Mizrahi Aff.* at ¶ 17. [Ex. N] [March 4, 2019 Deficiency Letter].

On March 6, 2019, in response to Defendants' First Deficiency Letter, Plaintiff provided responses and objections to Defendants' Discovery Requests. *Id.* at ¶ 18 [Exs. O-1-O-2] [Responses to Defendants' Discovery Requests]. Of critical importance, Plaintiff did not produce (i) any documents relating to Talico Contracting Inc.; (ii) copies of his Federal and State Tax Returns, W-2s and 1099s for years 2014 - 2018; (iii) documents relating to Plaintiff's employment history from 2014 – 2018; or verified interrogatory responses pursuant to Fed.R.Civ.P. 33(b). Plaintiff also averred that he "preserved all documents [and] other evidence" in his possession relating to the Federal Action. *Id.* [Ex. O at pp. 2-14, 20, 22-23, 28-31] [March 6, 2019 Responses]. In response to Defendants' document requests, Plaintiff produced a total of four (4) individual pages, consisting of: (i) Plaintiff's scaffold erector / dismantler license, and (ii) IRS Form W-2 from Lintech for years 2015 – 2017. *Id.*

As set forth more fully below, Plaintiff and Attorney Silver withheld critical documents related to Plaintiff's employment history, *i.e.*, tax records, for nearly two years.

### E. Defendants' April 4, 2019 Supplemental Discovery Production

On April 4, 2019, Defendants served Plaintiff's counsel with a courtesy link to the Dropbox folder containing Defendants' supplemental document production. *Mizrahi* Aff. at ¶ 19 [Ex. P] [April 4, 2019 Email]. Defendants' April 4, 2019 supplemental document production consisted of additional (i) U.S. DOL Forms WH-347, certifying Plaintiff's hours worked and wages paid pursuant to 29 C.F.R. § 3.3; (ii) daily time records, signed and dated by Plaintiff; and (iii) paystubs issued to Plaintiff. *Id.* By April 4, 2019, Defendants provided Plaintiff with over 330 individual pages of payroll and timekeeping records. *Id.* Once again, Plaintiff (and his counsel) had been

provided documentary information that materially undermined the main factual allegations in the Complaint.

### F. Plaintiff's First Set of Revised Responses to Defendants' Interrogatories

On May 7, 2019, in response to Defendants' April 12, 2019 letter motion, Attorney Silver supplemented his responses to Defendants' Interrogatories. *Mizrahi Aff.* at ¶ 20 [Ex. Q] [May 7, 2019 Supplemental Responses].

Of critical importance, Plaintiff's revised interrogatory responses: failed to identify (i) documents relating to Talico Contacting Inc.; or (ii) documents relating to Plaintiff's employment history from 2014 – 2018; and for the first time; (iii) identified "Manmohan Singh", "Kuldeep Singh" and "Gurpeet Singh" as material fact witnesses; and (iv) identified "Manmohan Singh"[4] as one of Plaintiff's supervisors.  *Id*. Plaintiff also averred that he "preserved all documents [and] other evidence" in his possession relating to the Federal Action. *Id*.

As set forth more fully below, Plaintiff and Attorney Silver's representations were materially false, and made in bad faith.

### G. Attorney Silver's Representations Regarding Plaintiff's Language Capabilities

In two emails to Defendants' counsel, on September 5, 2019 and September 20, 2019, Attorney Silver represented that Plaintiff would require a Punjabi interpreter for his scheduled deposition. *Id*. at ¶ 21 [Ex. R] [September 20, 2019 Email Chain]. In response, Defendants' counsel requested that Attorney Silver explain how he had been communicating with his client so far, in light of the language barrier.  *Id*. Attorney Silver never responded to Defendants' counsel's September 20, 2019 email. *Id*.

---

[4] According to the second amended complaint filed in the Talico Action, "Manmohan Singh" was the principal of Talico Contracting Inc., the scaffolding company that employed "Kuldeep Singh" and "Jagdev Singh" as scaffold erectors and dismantlers on various NYCHA projects.  *Mizrahi* Aff. at ¶ 31 [Ex. AA at ¶¶ 7-8, 12] [Talico Complaint].

### H.  Defendants' September 23, 2019 Deposition

Defendant Linden Tudor was deposed on September 23, 2019. *Id*. at ¶ 22; [*see also* Dckt. No. 28]. Mr. Tudor's deposition lasted approximately five (5) hours. *Mizrahi Aff*. at ¶ 22.

### I.  Plaintiff's September 24, 2019 Deposition

Plaintiff was deposed on September 24, 2019 (the "September 24, 2019 Deposition"). At the September 24, 2019 Deposition, Plaintiff testified – with the assistance of a Punjabi interpreter – that he can neither read nor understand English, that he never read the Complaint filed the instant Federal Court Action, that the Complaint was never translated into Punjabi, and that Plaintiff never reviewed the Complaint for accuracy. *Id*. at ¶ 23 [Ex. S at 23:11-18; 25:9-12; 25:17-24; 25-25-26:7; 26:11-12] [September 24, 2019 Deposition Transcript]. At the September 24, 2019 Deposition, Attorney Silver stated, on the record, that Plaintiff requires a Punjabi interpreter to communicate, and that Plaintiff cannot read English. *Id*. at ¶ 23 [Ex. S at 24:8-13; 24:19-22; 27:25-28:2-10] [September 24, 2019 Deposition Transcript]. Plaintiff did not mention performing any services for "Uber"[5] or any other employer at the September 24, 2019 Deposition. *Id*. [Ex. S at Index, pp. 15-19] [September 24, 2019 Deposition Transcript].

### J.  Plaintiff's October 4, 2019 Deposition

Plaintiff's continued deposition took place on October 4, 2019 (the "October 4, 2019 Deposition"). Of critical importance, Plaintiff testified – with the assistance of a Punjabi interpreter – that he had provided Attorney Silver with documents related to *his entire* work history during the relevant period, and that he never reviewed his May 7, 2019 supplemental responses to Defendants' interrogatories for accuracy. *Id*. at ¶ 24 [Ex. T at 97:9-11; 130:3-6] [October 4, 2019 Deposition Transcript]. Plaintiff, and Attorney Silver, also repeatedly represented that Plaintiff can

---

[5] Contrary to Attorney Silver's representations at the October 29, 2020 conference. *See Mizrahi Aff*. at *Id* [Ex. J at 3:2-5; 4:14-17, 5:1-3] [October 29, 2020 Transcript].

neither read nor understand English. *Id*. at ¶ 24 [Ex. T at 62:8-10, 62:15-18; 73:8-9; 73:24; 74:3-5; 74:19-21; 76:15; 77:2-3; 79:3; 80:21-25; 112:2-10; 142:9-11; 146:5-7; 148:12-14; 156:10-11] [October 4, 2019 Deposition Transcript].

Plaintiff did not mention performing any services for "Uber" [6] or any other employer at the October 4, 2019 Deposition. *Id*. [Ex. T at Index, pp. 19-29] [October 4, 2019 Deposition Transcript]

Plaintiff's September 24, 2019 and October 4, 2019 Depositions have no value given that Plaintiff did not produce (i) any documents relating to Talico Contracting Inc.; (ii) copies of his Federal and State Tax Returns, W-2s and 1099s for years 2014 - 2018; or (iii) documents relating to Plaintiff's employment history from 2014 – 2018. *Id*. at ¶ 18 [Exs. O-1-O-2] [March 5, 2019 Responses]; ¶ 20 [Ex. Q] [May 7, 2019 Supplemental Responses].

### K. Defendants' Additional Supplemental Discovery Productions

Between October 7, 2019 and July 28, 2020, Defendants supplemented their document production on five (5) separate occasions. *Mizrahi* Aff. at ¶ 25 [Ex. U] [Supplemental Document Production Emails and Sample Production]. Defendants' supplemental document production consisted of: (i) daily time records, signed and dated by Plaintiff; (ii) paystubs issued to Plaintiff; (iii) quarterly IRS Form 941 Statements; (iv) quarterly NYS Form 45 Statements; (v) bank statements; and (vi) copies of cashed and deposited checks issued to Plaintiff. *Id*. By July 28, 2020, Defendants provided Plaintiff with over 1,300 individual pages of payroll and timekeeping records. *Id*. Once again, Plaintiff (and his counsel) had been provided documentary information that materially undermined the main factual allegations in the Complaint.

---

[6] Contrary to Attorney Silver's representations at the October 29, 2020 conference. *See Mizrahi Aff.* at *Id* [Ex. J at 3:2-5; 4:14-17, 5:1-3] [October 29, 2020 Transcript].

**L.  Defendants' Revelatory September 15, 2020 Supplemental Discovery Production of the 2018 Talico W-2**

On September 15, 2020, Defendants served Plaintiff's counsel with a courtesy link to the Dropbox folder containing Defendants' supplemental document production. *Mizrahi Aff.* at ¶ 26 [Ex. V] [September 15, 2020 Email]. Defendants' September 15, 2020, supplemental document production consisted of Plaintiff's 2018 IRS Form W-2 issued by Talico. *Id*. This production conclusively revealed that Plaintiff and Attorney Silver had been withholding critical evidence and materially misleading Defendants, and the Court, since the Initial Case Conference.

**M.  Defendants' September 21, 2020 Deficiency Letter**

In light of the newly discovered 2018 IRS Form W-2 issued by Talico, on September 21, 2020, Defendants served Plaintiff with a deficiency letter, noting Plaintiff's evasive responses to Defendants' Discovery Requests, in violation of Fed.R.Civ.P. 26(g) and 34(b)(2) (the "Second Deficiency Letter"). The Second Deficiency Letter noted that: (i) Plaintiff was improperly asserting boiler-plate general objections in violation of this Court's June 27, 2019 Order; (ii) Plaintiff was unjustifiably withholding information and documents in his possession, custody and control, relating to his employment with other parties, *to wit*: Talico Contracting Inc.; and (iii) Plaintiff was making materially misleading statements to the Court regarding his employment history with other parties during the relevant period. *Id*. at ¶ 27 [Ex. W] [Second Deficiency Letter].

**N.  Attorney Silver's One (1) Page Supplemental Document Production**

On October 7, 2020, in response to the Second Deficiency Letter, Plaintiff supplemented his responses & objections to Defendants' Discovery Requests. Attorney Silver simply re-produced the same IRS Form W-2 statement for 2018 from Talico Contracting Inc. issued to Plaintiff, and doubled-down on the false narrative that Plaintiff exclusively worked at Lintech from 2014-2018. *Id.* at ¶ 28 [Exs. X-1-X-2] [October 7, 2020 Supplemental Discovery].

**O.  Defendants' October 8, 2020 Deficiency Letter**

On October 8, 2020, Defendants served Plaintiff with a deficiency letter (the "Third Deficiency Letter"), noting that (i) Plaintiff was asserting boiler-plate general objections in violation of this Court's June 27, 2019 Order; and (ii) Plaintiff's Supplemental Responses to Defendants' First Set of Interrogatories was not verified pursuant to Fed.R.Civ.P. 33(b)(5). *Id.* at ¶ 29 [Ex. Y] [Third Deficiency Letter].

**P.  Attorney Silver's Revelatory 115-Page Document Production**

Nearly *two years* after the commencement of the instant Federal Court Action, on October 13, 2020, Plaintiff finally supplemented[7] his responses & objections to Defendants' Discovery Requests. Astonishingly, Plaintiff's **one hundred and fifteen (115) page** supplemental document production consisted of, *inter alia*: (i) 2014 IRS Form W-2 Statements from "Sharan Builders Inc."; (ii) 2014 IRS Form W-2 Statements from "Talico Contracting Inc."; (iii) 2015 IRS Form W-2 Statements from "Neelam Construction Corporation."; (iv) 2015 IRS Form W-2 Statements from "Talico Contracting Inc."; (v) 2015 IRS Form W-2 Statements from "RSN Construction Co. Inc."; (vi) 2016 IRS Form W-2 Statements from "Talico Contracting Inc."; (vii) 2016 IRS Form W-2 Statements from "Lakhi General Contractor Inc."; (viii) 2016 IRS Form 1099-MISC Statements from "Unter, LLC"; (ix) 2016 IRS Form 1099-MISC Statements from "Uber Technologies, Inc."; (x) Plaintiff's 2016 Personal IRS Tax Returns, containing representations that Plaintiff's "principal business or profession" was a "Taxi Limo Service"; (xi) 2017 IRS Form 1099-MISC Statements from "Uber Technologies, Inc."; (xii) 2017 IRS Form W-2 Statements from "S & N Builders, Inc."; (xiii) 2017 IRS Form W-2 Statements from "Talico Contracting Inc."; (xiv) Plaintiff's 2017

---

[7] Of critical importance, Plaintiff's October 13, 2020 supplemental responses – **for the first time in the Federal Court Action** – contained a translator's certification, from Harjit Kaur. *Id.* at ¶ 30 [Ex. Z-1-Z-2] [October 13, 2020 Supplemental Responses].

Personal IRS Tax Returns, containing representations that Plaintiff's "principal business or profession" was a "Taxi Limo Service."; (xv) Plaintiff's 2018 Personal IRS Tax Returns, containing representations that Plaintiff's "principal business or profession" was a "Taxi Operator"; (xvi) Plaintiff's 2018 Personal IRS Tax Returns, containing representations that Plaintiff was issued a W-2 by "Metropolitan Construction Corp."; and (xvii) Plaintiff's 2018 Personal IRS Tax Returns, containing representations that Plaintiff was issued a W-2 by "Talico Contracting Inc." *Id.* at ¶ 30 [Ex. Z-1-Z-2] [October 13, 2020 Supplemental Responses]; [*see also* Dckt. No. 89].

Thus, Plaintiff's 115-page document production identified ***nine (9) other employers*** Plaintiff worked for between 2014 and 2018.

On October 16, 2020, Defendants filed a letter, informing the Court of Plaintiff's revelatory document production. *Id.* at ¶ 12 [Ex. I] [October 16, 2020 Letter] [Dckt. No. 89]. As noted in Defendants' letter, Plaintiff's production, made nearly ***two years*** after the filing of Plaintiff's Complaint, proves that Plaintiff has violated Fed.R.Civ.P. 26(g) and 34(a), and this Court's January 30, 2019, June 27, 2019, and September 22, 2020 Orders [*see* Dckt. Nos. 12, 23, 88]. Furthermore, the 115-page production demonstrates that Plaintiff has materially misled the Court from the beginning of the Federal Court Action regarding his employment history.

### III. Plaintiff and Attorney Silver's Frivolous State Court Lawsuits Against Defendants

Plaintiff and Attorney Silver's violations of the discovery protocols and Orders in the instant Federal Court Action must be viewed in light of Plaintiff (and his counsel's) commencement of two related frivolous proceedings against, *inter alia*, Defendants. These actions have no legal merit, needlessly ratcheted-up Defendants' costs and legal fees, and are demonstrative of Plaintiff and Attorney Silver's bad faith.

**A.  The State Court Actions, and the *Lis Pendens* Against Mr. Tudor's Residential Home and Commercial Property**

Over one year following the commencement of the instant Federal Court Action, Plaintiff filed two separate fraudulent conveyance actions in New York State Supreme Court (the "State Court Actions"). [*See* Dckt. Nos. 32, 39]. Plaintiff also filed two separate *lis pendens* on Defendants' residential and commercial properties. *Id*. Defendants subsequently removed the State Court Actions to this Court, and filed a motion to dismiss the complaints, to cancel the *lis pendens,* and for an award of attorneys' fees, costs, and sanctions pursuant to CPLR § 6514 (c), 28 U.S.C. § 1927 and the Court's inherent authority. [*See* Dckt. Nos. 72-80]. As set forth more fully in Defendants' motion to dismiss, which is respectfully incorporated by reference herein, the state court complaints, which were pled entirely "upon information and belief", and the *lis pendens*, were filed in bad faith. *Id*.

**IV.    Attorney Silver's Representation of Different Plaintiffs Against Talico**

As set forth more fully below, Attorney Silver's violations of the discovery protocols and Orders in the instant Federal Court Action must also be viewed in light of his commencement of another federal court lawsuit against the very parties that the undersigned law firm had admonished Attorney Silver had employed Plaintiff.  Thus, Attorney Silver had demonstrable knowledge concerning Talico Contracting Inc.

**A.  Plaintiff's Counsel Files another FLSA Lawsuit Against Talico Contracting Inc.**

On December 10, 2019, nearly one (1) year after the Initial Case Conference in the instant Federal Action, Plaintiff's counsel filed a separate lawsuit in this District, captioned *Kuldeep Singh and Jagdev Singh v. Mandeep Kaur, Talico Contracting Inc., Neelam Construction Corp., and Western Surety Co.,* Case No.: 1:19-cv-06927-BMC (the "Talico Action"), to recover alleged unpaid minimum wages, unpaid overtime wages, unpaid prevailing wages, and unpaid

supplemental benefits pursuant to the FLSA and NYLL. *Mizrahi* Aff. at ¶ 31 [Ex. AA] [Talico Complaint]. According to the operative pleading[8] in the Talico Action, the plaintiffs, Kuldeep Singh and Jagdev Singh, allegedly worked as a scaffold erectors and dismantlers at New York City Housing Authority ("NYCHA") projects[9] for defendants Mandeep Kaur, Manmohan Singh, and Talico Contracting Inc., from May 2013 through March 2018. *Id*. The allegations in the Talico Action mirror the allegations in the instant Federal Court Action. *Compare Mizrahi* Aff. at ¶ 3 [Ex. A] [Complaint] *with* ¶ 31 [Ex. AA] [Talico Complaint].

According to the signed and dated daily time records contained in Defendants' document production in the instant Federal Court Action, made as early as December 20, 2018: (i) Plaintiff worked on the same NYCHA projects as the plaintiffs in the Talico Action; (ii) "Neelam Construction Corporation" was identified as the NYCHA general contractor on these NYCHA projects; and (iii) "Kuldeep Singh", "Mandeep Kaur" and "Manmohan Singh", *i.e.,* the parties in the Talico Action, were identified as the general contractor's supervisors. *Id*. at ¶ 25 [Ex. U] [Sample Production]; *see also id.* at ¶ 20 [Ex. Q] [Plaintiff's May 7, 2019 Supplemental Responses] (identifying "Manmohan Singh" as Plaintiff's supervisor, and "Kuldeep Singh" as a material fact witness).

## B.  Attorney Silver Attempts to Withdraw from the Talico Action

On November 9, 2020, the Court in the Talico Action ordered Attorney Silver to show cause "why sanctions, including dismissal, should not be ordered against them **pursuant to Federal Rule of Civil Procedure 37 for failure to cooperate in discovery**", after Attorney Silver

---

[8] Attorney Silver filed the initial complaint in the Talico Action on December 10, 2019, an amended complaint on January 30, 2020, and a second amended complaint on June 2, 2020. *Mizrahi Aff*. at ¶ 32 [Ex. BB] [Talico Docket].
[9] *To wit*: "Atlantic Terminal", "James Weldon Johnson Houses", "Seward Park Extension", "Shelton Houses", "Bland Houses," and "Thomas Jefferson Houses". These are the same NYCHA projects that Plaintiff allegedly worked on in the Federal Court Action. *See Mizrahi Aff*. at ¶ 25 [Ex. U] [Sample Production].

unilaterally canceled his clients' deposition scheduled for October 30, 2020, *i.e.,* **one day after the emergency October 29, 2020 Conference in the Federal Court Action.** *Id.* at ¶ 32 [Ex. BB] [Talico Docket, November 9, 2020 Order] (emphasis added); ¶ 33 [Ex. CC] [November 8, 2020 Letter Motion]. The timing is inexplicable.

Following entry of the Court's order to show cause, Attorney Silver filed a letter motion to withdraw as counsel of record. *Mizrahi* Aff. at ¶ 34 [Ex. DD] [November 9, 2020 Letter Motion]. In his letter to the Court, Attorney Silver averred:

> "the motion would be based on certain communications and documents provided by my clients that greatly impact the claims made by them by this office and the representations made by this office on their behalf to counsel and the Court. This has created fundamental differences with the clients about how to proceed."

*Id.*

The Court subsequently ordered Attorney Silver to:

> "…[S]how good cause for [withdrawal]…in light of the intense litigation and commitment of resources by defendants over the last year. Counsel should not assume that the motion will be granted…. If it is a conflict issue, **counsel must show that there was adequate due diligence in taking the case in the first place and accepting his clients' version of the events**.

*Id.* at ¶ 32 [Ex. BB] [Talico Docket, November 9, 2020 Order] (emphasis added).

On November 16, 2020, Attorney Silver filed an affirmation[10] in support of his motion to withdraw. *Id.* In his affirmation, Attorney Silver averred that the information provided by his clients at the outset of the action was inaccurate, and materially contradicted the wage-and-hour allegations in the complaint. *Id*. at ¶ 35 [Ex. EE] [November 16, 2020 Affirmation]. It is unclear from Attorney Silver's affirmation whether this inaccurate information was provided before, or after, Attorney Silver filed the most recent Second Amended Complaint in the Talico Action, on June 2, 2020. *Id.*

---

[10] Attorney Silver's unredacted affirmation was inexplicably filed *ex parte*. A redacted version of Attorney Silver's November 16, 2020 is filed on the Court Docket.

On November 19, 2020, the Court denied Attorney Silver's motion to withdraw for failure to show good cause. *Id.* at ¶ 32 [Ex. BB] [Talico Docket, November 19, 2020 Order]. The Court's Order stated, in pertinent part:

> "**If a lawyer discovers that his client has given him inaccurate material information that has become part of the record of the case, the lawyer cannot simply head for the hills.** He has a duty to advise his client to correct the misinformation. If the correction is fatal to the plaintiff's case, then the lawyer has the duty to urge the client to move to voluntarily dismiss the case. Despite the *ex parte* filing by counsel, **there is no indication that counsel has even attempted to get his clients' consent to correct any alleged misinformation or to voluntarily dismiss the case**."

*Id.* (emphasis added).

On December 7, 2020, Attorney Silver was, once again, ordered to show cause why sanctions, including dismissal of the action, should not be entered against him, for his "failure to cooperate in discovery, failure to correct inaccurate material information that has become part of the record, and failure to respond to the Court's prior order to show cause." *Id.* at ¶ 32 [Ex. BB] [Talico Docket, December 7, 2020 Order to Show Cause].

## C. The Voluntary Dismissal of the Talico Action

On December 21, 2020, Attorney Silver filed a proposed stipulation and order dismissing the Talico Action. *Id*. at ¶ 32 [Ex. BB] [Talico Docket]. In a letter filed on December 21, 2020, Attorney Silver stated:

> "After substantial communications with my clients, which took place over several weeks, plaintiffs were made aware of the issues raised concerning their document production and their prior testimony and how that effected pursuing the claims they made in the complaint."

*Id*. at ¶ 36 [Ex. FF] [December 21, 2020 Letter].

On December 22, 2020, the Court entered a consent order dismissing the Talico Action *with prejudice* against the appearing defendants, and without prejudice against the non-appearing defendants. *Id*. at ¶ 32 [Ex. BB] [Talico Docket at Dckt. No. 51].

**LEGAL STANDARD**

**I.      Sanctions Under Fed.R.Civ.P. 26(g)(3)**

Fed.R.Civ.P. 26(g) requires that "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection **must be signed** by at least one attorney of record in the attorney's own name." Fed.R.Civ.P. 26(g)(1) (emphasis added).

"By signing a response to a discovery request, an attorney certifies that to the best of her 'knowledge, information, and belief formed after a reasonable inquiry,' the response is (1) consistent with the Federal Rules of Civil Procedure and justified under existing law; (2) not interposed for any improper purpose, such as to unnecessarily delay or needlessly increase the costs of litigation; and (3) reasonable given the importance of the issue and the circumstances of the case.'" *Markey v. Lapolla Indus., Inc.*, 2015 WL 5027522, at *15 (E.D.N.Y. 2015), (*quoting Kiobel v. Royal Dutch Petroleum Co.*, 2009 WL 1810104, at *2 (S.D.N.Y. 2009) and Fed.R.Civ.P. 26(g)(1)).

"Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by 'explicitly encouraging the imposition of sanctions.'" *Kiobel*, 2009 WL 1810104 at *2 (quoting Fed.R.Civ.P. 26 advisory committee's note). The certification requirement "obliges each attorney to stop and think about the legitimacy of the discovery request, a response thereto, or an objection." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees and Rest, Employees Int'l Union*, 212 F.R.D. 178, 218-19 (S.D.N.Y. 2003) (quoting Fed.R.Civ.P. 26(g), advisory committee's note to 1983 Amendment). "[A]ll attorneys conducting discovery owe the court a heightened duty of candor." *Kosher Sports, Inc. v. Queens Ballpark Co., LLC*, 2011 WL 3471508, at * 7 (E.D.N.Y. 2011).

"Pursuant to Rule 26(g)(3), if an attorney's certification violates Rule 26 without substantial justification, **sanctions are mandatory**." *Kiobel*, at *2 (quoting Fed.R.Civ.P. 26(g)(3)) (emphasis added). If sanctions are imposed, the "sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed.R.Civ.P. 26(g)(3).

The Court may not award reasonable expenses, however, if the nondisclosure was "substantially justified" or "other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(5)(A)(ii),(iii). Conduct is "substantially justified" if there was a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the contested action. *Jindan Wu v. Seoul Garden, Inc.,* 2018 WL 507315, at *8 (E.D.N.Y. 2018).

## II.    Sanctions Under Fed.R.Civ.P. 37(c)

Pursuant to Fed.R.Civ.P. 37(c), a court may impose sanctions in the event of a party's failure to disclose, to supplement an earlier response, or to admit as required by Rule 26(a) or (e), "unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). The party requesting sanctions under Rule 37 must show:

> (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 258 (E.D.N.Y. 2011) (*citing In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 131–32 (S.D.N.Y. 2007).

The purpose of this Rule is to prevent the practice of "sandbagging" an opposing party with new evidence. *Borsanyi v. Huggins*, 2019 WL 4911188, at *6 (E.D.N.Y. 2019) (*citation omitted*). The Rule permits a court to impose a variety of sanctions for discovery-related abuses, including "[the] payment of the reasonable expenses, including attorney's fees." *Id*. Where, as here, "the

alleged misconduct is the non-production of relevant documents, district courts have broad discretion in fashioning an appropriate sanction." *JMC Rest. Holding, LLC v. Pevida*, 2016 WL 3351007, at *6 (E.D.N.Y. 2016).

### III.    Sanctions Under 28 U.S.C. § 1927 and the Court's Inherent Authority

Pursuant to 28 U.S.C. § 1927[11], "[a]ny attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Similarly, under the Court's inherent authority to control the proceedings that take place before it, any federal court "may exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *JMC Rest. Holding, LLC*, 2016 WL 3351007 at *6 (internal quotations and citations omitted). The Second Circuit has held that "[t]o impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (internal quotation marks and citation omitted).

### IV.    Sanctions Under Fed.R.Civ.P. 37(b)

Fed.R.Civ.P. 37(b)(2)(A) provides that, if a party fails to comply with an order to permit discovery, the court may issue an order "striking pleadings in whole or in part" or "rendering a default judgment against the disobedient party." *Id*. Although the Second Circuit has observed that some of Rule 37's penalties can be "harsh" and a form of "strong medicine," it has acknowledged the need to apply them in appropriate cases.  *Id*.; *see also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (stating that "severe sanctions are appropriate" when a party

---

[11] Should the Court find favorably for Defendants, Defendants respectfully request an opportunity to submit billing records for Defendants' attorneys' fees, costs and expenses.

has sought to frustrate the discovery process by withholding essential facts). "There are two basic limitations upon a district court's discretion…The rule expressly requires that the sanctions must be 'just'; and the sanction must relate to the particular claim to which the discovery order was addressed." *Daval Steel Prod*, 951 F.2d at 1366 (2d Cir. 1991) (citation omitted). The Second Circuit has identified several non-exclusive and non-dispositive factors to evaluate whether severe sanctions are just, including "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance, and (4) whether the non-compliant party had been warned of the risk of sanctions." *Lopez v. Cajmant LLC*, 2016 WL 7017361, at *2 (E.D.N.Y. 2016).

## ARGUMENT

### I.   Defendants are Entitled to Sanctions Under Fed.R.Civ.P. 26(g)(3)

Plaintiff and Attorney Silver violated their discovery obligations under Fed.R.Civ.P. 26(g) by falsely certifying Plaintiff's responses and supplemental responses to Defendants' Discovery Requests.

In Plaintiff's March 6, 2019 initial responses to Defendants' Discovery Requests, and May 7, 2019, October 7, 2020, and October 13, 2020 supplemental responses, Attorney Silver certified that Plaintiff did not possess any: (i) documents relating to Talico Contracting Inc.; (ii) Federal and State Tax Returns, W-2s or 1099s for years 2014 – 2018; or (iii) documents relating to Plaintiff's employment history from 2014 – 2018. Attorney Silver also certified that: (iv) Plaintiff "preserved all documents [and] other evidence" in his possession relating to the Federal Action; and that (v) Plaintiff held no positions of employment from 2014 – 2018, other than working as an electrician at Lintech. *Mizrahi Aff.* at ¶ 18 [Ex. O-1-O-2] [March 6, 2019 Responses]; ¶ 20 [Ex. Q] [May 7, 2019 Supplemental Responses]; ¶ 28 [Exs. X-1-X-2] [October 7, 2020 Supplemental Responses]; ¶ 30 [Ex. Z-1-Z-2] [October 13, 2020 Supplemental Responses].

In Attorney Silver's July 17, 2019 letter in response to the Court's June 27, 2019 Order, Attorney Silver, once again, certified that Plaintiff was not withholding any: (i) documents relating to Talico Contracting Inc.; (ii) Federal and State Tax Returns, W-2s or 1099s for years 2014 – 2018; or (iii) documents relating to Plaintiff's employment history from 2014 – 2018. *Id*. at ¶ 10 [Ex. G] [July 17, 2019 Letter].

Thus, Attorney Silver falsely certified, ***on five (5) occasions***, that he satisfied his obligation under subdivision (g)(1) of Rule 26 to make a "reasonable inquiry" into each discovery request. *See* Fed.R.Civ.P. 26(g)(1); *Markey*, 2015 WL 5027522 at *15 (E.D.N.Y. 2015). As demonstrated more fully below, each of Attorney Silver's certifications violated Fed.R.Civ.P. 26(g)(1) without any substantial justification.

## A. Plaintiff's Failure to Truthfully Respond to Defendants' Discovery Requests was not "Substantially Justified"

Nearly *two years* after the commencement of the instant Federal Court Action, on October 13, 2020, Plaintiff finally supplemented his responses & objections to Defendants' Discovery Requests. *Supra* at pp. 20-1.

Plaintiff failed to provide a credible explanation or justification for defying this Court's January 30, 2019, June 27, 2019, and September 22, 2020 Orders [Dckt. Nos. 12, 23, 88] or Fed.R.Civ.P. 26(g) and 37(c) for nearly two years.

### i.   Plaintiff was in Possession of the Requested Discovery

This is *not* the case where Plaintiff was not in possession, custody or control of responsive information to Defendants' Discovery Requests. Plaintiff's initial March 6, 2019 document production consisted of, *inter alia*, IRS Form W-2 for years 2015 – 2017 from Lintech issued to Plaintiff. *Mizrahi Aff*. at ¶ 30 [Ex. O]. Thus, Plaintiff had control over and the ability to produce tax documentation.

Critically, Plaintiff's October 13, 2020 production serves as a *de facto* admission that Plaintiff possessed control over responsive documents in the first place. *See Scottsdale Ins. Co. v. United Indus. & Constr. Corp.,* 2014 WL 12834839, at *2 (E.D.N.Y. 2014) (awarding sanctions and noting that belated compliance does not insulate a party from sanctions."); *see also Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp*., 602 F.2d 1062, 1068 (2d Cir. 1979) ("[P]laintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall.").

### ii.   There are Serious Questions Regarding Attorney Silver's Efforts to Communicate with his Client

Of critical importance, Plaintiff's October 13, 2020 supplemental responses – **for the first time in the Federal Court Action –** contained a translator's certification, from Harjit Kaur. *Mizrahi Aff*. at ¶ 30 [Ex. Z-1-Z-2]. None of Plaintiff's other responses, supplemental responses, or any other Court filings contained any such certification. *Id*. at ¶ 18 [Ex. O-1-O-2] [March 6, 2019 Responses]; ¶ 20 [Ex. Q] [May 7, 2019 Supplemental Responses]; ¶ 28 [Exs. X-1-X-2] [October 7, 2020 Supplemental Responses]. This is highly troubling, considering Plaintiff and Attorney Silver's representations at the September 24, 2019 and October 4, 2019 Depositions that Plaintiff can neither read nor understand English. *Id*. at ¶ 23 [Ex. S at 23:11-18; 24:8-13; 24:19-22; 25:9-12; 25:17-24; 25-25-26:7; 26:11-12; 27:25-28:2-10] [September 24, 2019 Deposition Transcript]; *Id*. at ¶ 24 [Ex. T at 62:9-10, 62:15-18; 73:8-9; 73:24; 74:4-5; 74:19-21; 76:15; 77:2-3; 79:3; 80:21-81:2; 112:2-10; 142:9-10; 156:10-11; 146:5-7; 148:13-14] [October 4, 2019 Deposition Transcript]. Attorney Silver's failure to produce Plaintiff at the Settlement Conference, and his silence in response to Defendants' September 20, 2019 email, raise additional questions regarding

Attorney Silver's efforts to communicate with Plaintiff. *Id.* at ¶¶ 11, 21 [Ex. R] [September 20, 2019 Email Chain].

To date, Attorney Silver has not explained how he has been effectively communicating with his client – who only speaks Punjabi. *Id*. This is not an isolated occurrence. In the Talico Action, the Court reprimanded Attorney Silver for failing to explain his "diligence in taking the [Talico Action] in the first place and accepting his clients' version of the events", which were later found to be false. *Id.* at ¶ 32 [Ex. BB] [Talico Docket, November 9, 2020 Order]; *see also id*. at ¶ 34 [Ex. DD] [November 9, 2020 Letter Motion] (Attorney Silver stating that client communications were later found to be false); *Id*. at ¶ 36 [Ex. FF] [December 21, 2020 Letter] (Attorney Silver admitting that his clients' prior testimony was false).

Thus, Attorney Silver should not be permitted to exploit his clients' language barrier in justifying his own discovery abuses and litigation misconduct.

### iii. Plaintiff's Counsel Ignored Multiple Warnings Concerning Plaintiff's Actual Employer

Defendants' counsel explicitly warned Attorney Silver on ***seven (7)*** occasions that Plaintiff was not a full-time employee at Lintech, and that he performed work for other companies, including Talico. *See Id.* at ¶ 5 (warning at Initial Case Conference); ¶ 16 [Ex. M] [March 4, 2019 Email]; ¶ 8 [Ex. E] [April 12, 2019 letter motion]; ¶ 26 [Ex. V] [September 15, 2020 Email, and Production of Talico W-2]; ¶ 27 [Ex. W] [Second Deficiency Letter]; ¶ 12 [Ex. I] [October 16, 2020 Letter]; ¶ 13 [Ex. J] [October 29, 2020 Transcript].

Plaintiff and his counsel willfully ignored each of these warnings, *even after* Defendants produced a 2018 IRS Form from Talico issued to Plaintiff on September 15, 2020. *Id.* at ¶ 26 [Ex. J at 3:20-24] [October 29, 2020 Transcript]; ¶ 28 [Exs. X-1-X-2] [October 7, 2020 Supplemental Responses]; ¶ 30 [Ex. Z-1-Z-2] [October 13, 2020 Supplemental Responses].

## II.       Defendants are Entitled to Sanctions Under Fed.R.Civ.P. 37(c)

Fed.R.Civ.P. 37(c) specifically provides that where a party without substantial justification fails to disclose required information, or to amend a prior response to discovery as required, the Court may enter an order for monetary sanctions, including attorney's fees, in addition to any other appropriate sanctions. Fed.R.Civ.P. 37(c)(1).

At set forth in § I, *supra*, Plaintiff and Attorney Silver failed, for over two years, without justification, to comply with their obligations to produce and supplement discovery required by Fed.R.Civ.P. 26(a) and (e). Defendants have successfully established that Plaintiff and Attorney Silver have breached their discovery obligations, with a culpable state of mind, and that the belated disclosed evidence is highly relevant to the bona fides of the dispute. *See In re September 11th*, 243 F.R.D. at 131–32.

### A.   Plaintiff and Attorney Silver Had an Obligation to Timely Produce Employment Records Pursuant to Fed.R.Civ.P. 26(a) and (e)

Plaintiff and Attorney Silver had an obligation, pursuant to Fed.R.Civ.P. 26(a) to provide Defendants with records related to Plaintiff's employment history on or before February 13, 2019, *i.e.,* fourteen days after the January 30, 2019 Initial Case Conference. Fed.R.Civ.P. 26(e), thereafter, required that Plaintiff supplement his initial disclosures under Rule 26(a) and Plaintiff's responses to Defendants' Discovery Requests by producing employment records for Plaintiff's entire work history. Thus, Plaintiff and Attorney Silver violated Fed.R.Civ.P. 26(a) and (e).

### B.   Plaintiff and Attorney Silver's Culpable State of Mind

Plaintiff and Attorney Silver, were clearly aware of the existence of records identifying Plaintiff's other employers, including Talico.

Plaintiff's initial March 6, 2019 document production included tax returns issued by Lintech. *Mizrahi Aff.* at ¶ 18 [Exs. O-1-O-2]. Attorney Silver repeatedly certified that Plaintiff

"preserved all documents [and] other evidence", including his employment records, and that he was not withholding any responsive discovery.[12] Plaintiff testified – with the assistance of a Punjabi interpreter – that he had provided Attorney Silver with documents related to *his entire* work history during the relevant period. *Id*. at ¶ 24 [Ex. T at 97:9-11] [October 4, 2019 Deposition Transcript]. The Talico Action, filed by Attorney Silver on December 10, 2019, named parties identified by Defendants in multiple productions of daily time records, and by Plaintiff in his May 7, 2019 supplemental interrogatory responses. *Id*. at ¶ 31 [Ex. AA] [Talico Complaint]; ¶ 20 [Ex. Q] [May 7, 2019 Supplemental Responses]; ¶ 25 [Ex. U] [Sample Production]. The Talico Action also lists the same NYCHA projects[13] that Attorney Silver knew Plaintiff worked on. *Id* at ¶ 25 [Ex. U] [Sample Production]. Plaintiff's October 13, 2020 production serves as a *de facto* admission that Plaintiff possessed control over responsive documents in the first place. *Scottsdale Ins. Co.,* 2014 WL 12834839 at *2.

Critically, Plaintiff's 115-page production on October 13, 2020 was only made after Defendants acquired a 2018 IRS Form W-2 Statement from Talico Contracting Inc. issued to Plaintiff, and threatened Court intervention through deficiency letters.

## C. The Withheld Evidence is Highly Relevant and Material

As noted by the Court during the October 29, 2020 Conference, the 115- page supplemental production is "critical to the bona fides of the [P]laintiff's claim, and it comes after two years of litigation." *Mizrahi Aff*. at ¶ 13 [Ex. J at 2:23-25].

---

[12] *Id.* at ¶ 10 [Ex. G] [July 17, 2019]; ¶ 18 [Ex. O-1-O-2] [March 6, 2019 Responses]; ¶ 20 [Ex. Q] [May 7, 2019 Supplemental Responses]; ¶ 28 [Exs. X-1-X-2] [October 7, 2020 Supplemental Responses]; ¶ 30 [Ex. Z-1-Z-2] [October 13, 2020 Supplemental Responses].

[13] *To wit*: "Atlantic Terminal", "James Weldon Johnson Houses", "Seward Park Extension", "Shelton Houses", "Bland Houses," and "Thomas Jefferson Houses". These are the same NYCHA projects that Plaintiff allegedly worked on in the Federal Court Action. *See Mizrahi Aff*. at ¶ 25 [Ex. U] [Sample Production].

Accordingly, Defendants have satisfied their burden of showing that Plaintiff and Plaintiff's counsel, have failed, for over two years, without justification, to comply with their obligations to produce documents required by Fed.R.Civ.P. 26(a) and (e). *See Kramer v. Am. Int'l Indus.*, 2015 WL 6118254, at *2 (E.D.N.Y. 2015), *aff'd*, 2016 WL 3351006 (E.D.N.Y. 2016) (awarding sanctions under Fed.R.Civ.P. 37 for withholding documentary evidence, and violating Court's discovery orders); *Prendergast v. Hobart Corp.*, 2010 WL 3199699, at *5 (E.D.N.Y. 2010) (same). *Bellinger v. Astrue*, 2007 WL 2907320, at *1 (E.D.N.Y. 2007), *aff'd sub nom. Bellinger v. Barnhart*, 2007 WL 9718904 (E.D.N.Y. 2007) (same).

### III.   Defendants are Entitled to an Order Dismissing the Federal Court Action Under Fed.R.Civ.P. 37(b)(2)(a)

As detailed below, dismissal of the Complaint is warranted under Fed.R.Civ.P. 37 in light of (i) Plaintiff and Attorney Silver's willful non-compliance; (ii) the inefficacy of lesser sanctions; (iii) the duration of non-compliance; and (iv) Plaintiff and Attorney Silver's knowledge of consequences.

#### A.  Factor One – Willfulness

Courts in this District find a litigant's actions to be willful when there has been unexplained and repeated failure to respond to discovery requests, comply with court orders, and appear in a scheduled hearing. *Vargas v. Jet Peru-Courier Corp.*, 2018 WL 1545699, at *3 (E.D.N.Y. 2018).

##### i.      Plaintiff Repeatedly Failed to Respond to Defendants' Discovery Requests

As set forth in § I, *supra*, Attorney Silver made five (5) false certifications in response to Defendants' Discovery Requests. *Supra* at § I.

##### ii.     Plaintiff Failed to Comply with Clear and Unambiguous Court Orders

Attorney Silver failed to comply with this Court's clear and unambiguous Orders on five (5) separate occasions. First, Attorney Silver failed to comply with this Court's initial discovery

scheduling order, entered on January 30, 2019. Second, Attorney Silver failed to file an amended complaint by March 22, 2019, in defiance of the January 30, 2019 Order. Third, Attorney Silver failed to produce his client at the September 19, 2019 Settlement Conference, in defiance of the June 27, 2019 Order. Fourth, Attorney Silver made material misrepresentation in his July 17, 2019 letter, in defiance of the Court's June 27, 2019 Order. Fifth, Attorney Silver continued to withhold material discovery, in defiance of this Court's September 22, 2020 Order.

Attorney Silver's failure to comply with clear and unambiguous Court Orders exhibits willful behavior.

### iii.  Plaintiff's Non-Compliance is not Due to Factors Beyond His Control

As set forth in § I(A)(i)-(iii) and § II(B) *supra*, Plaintiff and Attorney Silver's non-compliance was not due to factors beyond their control, or otherwise "substantially justified". Plaintiff and Attorney Silver had control over Plaintiff's own tax records. *Supra*. at p. 8; § I(A)(i). Plaintiff's October 13, 2020 production serves as a *de facto* admission that Plaintiff possessed control over responsive documents in the first place. *Scottsdale Ins. Co.,* 2014 WL 12834839 at *2. Critically, Plaintiff's 115-page production on October 13, 2020 was only made after Defendants acquired a 2018 IRS Form W-2 Statement from Talico Contracting Inc. issued to Plaintiff, and threatened Court intervention through deficiency letters. On this basis alone, sanctions are warranted.

Further aggravating matters, Attorney Silver did not timely produce documents that had been provided by his client. Plaintiff testified – with the assistance of a Punjabi interpreter – that he had provided Attorney Silver with documents related to *his entire* work history during the

relevant period. *Mizrahi Aff*. at ¶ 24 [Ex. T at 97:9-11[14]] [October 4, 2019 Deposition Transcript]. These records were never timely produced.

Attorney Silver repeatedly certified that Plaintiff "preserved all documents [and] other evidence", including his employment records. *Supra* at § I. Attorney Silver repeatedly certified that he made a reasonable inquiry into Defendants' Discovery Requests. *Id*. In his July 17, 2019 letter, Attorney Silver affirmatively represented to the Court that he was not withholding any responsive discovery. *Mizrahi Aff*. at ¶ 10 [Ex. G] [July 17, 2019 Letter].

## B. Factor Two – Efficacy of Lesser Sanctions

"[D]istrict courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Xin Hao Liu v. Millenium Motors Sports*, LLC, 2020 WL 7028924, at *4 (E.D.N.Y. 2020).

Lesser sanctions would be ineffective in this case. Given (1) the bad-faith, repeated, and egregious nature of Plaintiff's discovery misconduct, (2) Plaintiff's repeated misrepresentations to the Court in an attempt to cover up this misconduct, (3) the fact that their misconduct may never have come to light if not for their having being caught, (4) their continued evasion even after having been caught, (5) the prejudice suffered by Defendants as a result of the foregoing, and (6) the particular stage of the proceedings, lesser sanctions – such as merely awarding attorneys' fees or providing an adverse inference instruction at a potential trial – would not sufficiently punish Plaintiff nor deter those who might be tempted to similar conduct. *See Abbott Laboratories, et al., v. Adelphia Supply USA*, *et al*, 2020 WL 1429472, at *6 (E.D.N.Y. 2020).

---

[14] **Mr. Singh:**     Wherever I work I had given the records to my attorney.

### C.  Factor Three – Duration of Non-Compliance

"[A] period 'as brief as a few months have [sic] been held to weigh in favor of dispositive sanctions ... [a]nd periods of six months or more weigh even more heavily toward such remedies.'" *Vargas*, 2018 WL 1545699, at *4 (quotation omitted). As of the filing of the instant Motion for Sanctions, ***two years and two months*** have elapsed since Defendants propounded their Discovery Requests on Plaintiff; and ***two years*** and **thirteen days have** elapsed since the January 30, 2019 Initial Case Conference, where Plaintiff was ordered to "file an amended complaint" against "Plaintiff's actual employer" on or before March 22, 2019. [*See* Dckt. No. 12]. Thus, sanctions are warranted. *See Ravenell v. Avis Budget Grp., Inc.*, 2012 WL 1150449, at *1 (E.D.N.Y. 2012) (dismissing Plaintiff's FLSA complaint under Fed.R.Civ.P. 37(b)(2)).

### D.  Factor Four – Knowledge of the Consequences of Non-Compliance

The fourth factor in considering whether to impose sanctions is whether the party has been warned of the consequences of noncompliance. The Second Circuit has noted that "[a]lthough formal warnings often precede the imposition of serious sanctions, this court has never considered warnings an absolute precedent." *Daval Steel Prods.*, 951 F.2d at 1366.

Plaintiff and Attorney Silver cannot deny that they were unaware of their discovery obligations as early as the Initial Case Conference. *Mizrahi Aff.* at ¶ 5; [*see also* Dckt. No. 12]. Defendants' counsel explicitly warned Attorney Silver ***seven (7)*** occasions that Plaintiff was not a full-time employee at Lintech, and that he performed work for other companies, including Talico. *Supra* at § I(A)(iii). These explicit warnings do not account for the (10) document productions consisting of over 1,300 individual pages, including *inter alia*, daily signed and dated time records and paystubs issued to Plaintiff.

Plaintiff and Attorney Silver willfully ignored each of these warnings. *Supra* at § I(A)(iii).

Attorney Silver was explicitly warned – by the Court – on June 26, 2019, when he was ordered to:

> "confirm in writing that no document or information has been withheld based upon the general objections and privilege assertions made in response to defendants' document demands and interrogatories…"

[Dckt. No. 23].

Moreover, at the October 29, 2020 telephonic conference, Attorney Silver admitted to the

Court:

> "I completely understand the implication of what he has produced, Your Honor"

> *Mizrahi Aff*. at ¶ 13 [Ex. J at 5:19-20].

Attorney Silver's attempts to withdraw from the Talico Action, underscore his knowledge

of the consequences of litigation misconduct. *Id.* at ¶ 32 [Ex. BB] [Talico Docket]; *id.* at ¶ 34 [Ex.

DD] [November 9, 2020 Letter Motion]; *id.* at ¶ 35 [Ex. EE] [November 16, 2020 Affirmation];

*id.* at ¶ 36 [Ex. FF] [December 21, 2020 Letter].

This is nothing short of willful defiance of the Court's authority and should not be tolerated.

*See Martinez v. City of New York*, 2018 WL 604019, at *32 (E.D.N.Y. 2018) (striking pleading

under Rule 37 for failure to comply with discovery obligations even absent a court order); *Isigi v.*

*Harry's Nurses Registry, Inc*., 2017 WL 4417659, at *2 (E.D.N.Y. 2017) (ordering dismissal under

Fed.R.Civ.P. 37(b)); *Chowdhury v. Hamza Express Food Corp*., 308 F.R.D. 74, 82 (E.D.N.Y.

2015) (non-complying party's "continuing saga of dilatory conduct [satisfied] the threshold for

entering a default judgment under Rule 37"); *Silverman & Silverman, LLP v. Pacifica Found*.,

2014 WL 3724801, at *4 (E.D.N.Y. 2014) (striking non-complying party's pleading under

Fed.R.Civ.P. 37(b)(2) for repeatedly disobeying discovery orders and demonstrating only minimal

compliance with discovery obligations).

**IV.    Defendants are Entitled to Sanctions Against Attorney Silver Under 28 U.S.C. § 1927 and the Court's Inherent Authority**

In addition to the sanctions that are available under Rule 37, sanctions may be imposed against an attorney under 28 U.S.C. § 1927, and this Court's inherent authority. *Martinez*, 2018 WL 604019 at *21.   Unlike Rule 37, sanctions under § 1927 may only be imposed against attorneys, not their clients, and may only be imposed where there has been a showing of bad faith; "[b]ad faith is the touchstone of an award under this statute." *Id.*  (citation omitted).

As set forth below, Attorney Silver's bad faith conduct in: (i) withholding critical evidence for over two years, in defiance of discovery obligations and multiple Court Orders; (ii) making material misrepresentations to the Court; (iii) filing and prosecuting the State Court Actions and *lis pendens*; and (iv) filing and prosecuting the Talco Action, warrants sanctions under 28 U.S.C. § 1927 and pursuant to the Court's inherent authority.

**A.  The Filing and Prosecution of the Federal Action Lacked a Colorable Basis**

A claim is colorable when it reasonably might be successful, while a claim lacks a colorable basis when it is utterly devoid of a legal or factual basis. *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999).

Here, sanctions are warranted where Plaintiff's central allegations of a 60- to 77-hour workweek at Lintech, spanning over four (4) years were knowingly false. *Mizrahi Aff.* at ¶ 3 [Ex. A at ¶ 8] [Complaint]. Plaintiff intentionally omitted key information from the Complaint that would have demonstrated the groundless nature of his claims.

**B.  Plaintiff's Counsel's Bad-Faith is Clear**

"Bad faith can be inferred when the actions taken are 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" *Estate*

*of Warhol*, 194 F.3d at 338 (*quoting People of the State of New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir. 1996)).

i.     **Withholding Critical Evidence for over Two years, in Defiance of Fed.R.Civ.P. and Multiple Court Orders**

As described above, Attorney Silver's attempts to avoid responsibility cannot be reconciled with the record before this Court. Attorney Silver falsely certified – *five* times – that Plaintiff did not possess any (i) documents relating to Talico Contracting Inc.; (ii) Federal and State Tax Returns, W-2s or 1099s for years 2014 – 2018; or (iii) documents relating to Plaintiff's employment history from 2014 – 2018. *Supra* at § I(A). Perhaps more troubling is Attorney Silver's doubling-down on these representations, even after it became clear that Plaintiff's 115-page document production cannot be squared with the allegations of the Complaint, or Attorney Silver's conduct throughout the litigation. [Ex. J at 3:20-24] [October 29, 2020 Transcript].

ii.     **Making Material Misrepresentations to the Court**

Attorney Silver's bad faith extends beyond the misrepresentations in the Complaint, and in his responses and supplemental responses to Defendants' Discovery Requests. Attorney Silver's bad faith permeates throughout his communications with the Court.

Despite having information about other employers at the outset of the Federal Court Action, Attorney Silver made multiple material misrepresentations to the Court, and did not correct the record until Defendants' production of a 2018 IRS Form W-2 issued by Talico, and threatened Court intervention.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion for Sanctions should be granted in its entirety, and an award of attorneys' fees, costs, and sanctions in an amount to be determined by the Court should be entered against Plaintiff and Attorney Silver.

Dated: New York, New York
      January 8, 2021

                        Respectfully Submitted,

                        LEVIN EPSTEIN & ASSOCIATES, P.C.

                        */s Jason Mizrahi*
                        Jason Mizrahi, Esq.
                        Joshua Levin-Epstein, Esq.
                        420 Lexington Avenue, Suite 2525
                        New York, New York 10170
                        Tel No.: (212) 792-0048
                        *Attorneys for Defendants*