UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GURSEWAK SINGH

                                   Plaintiff,


             -against-                                    18 CV 5780



LINTECH ELECTRIC, INC.;
LINDEN J. TUDOR
                              Defendants
------------------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN

### OPPOSITION TO DEFENDANTS MOTION FOR SANCTIONS




Dated:  Kew Gardens, New York
          March 12, 2021

                         JONATHAN SILVER ESQ.(7924)
                         Attorney for Plaintiff
                         80-02 Kew Gardens Road, Suite 316
                         Kew Gardens, New York 11415
                         (718) 520 1010

STATEMENT OF FACTS

This FLSA action was commenced in October 2018. Plaintiff made claim that he was working as an electrician for the defendant LINTECH from late 2014 until 2018 and was not paid union rates or supplemental benefits, worked overtime and was not paid overtime premium wages, did not receive wage statements as was required.

Defendant filed an answer on December 29, 2018 denying each and every allegation of the complaint.

An initial in person conference was held on 1/30/19 at which time counsel for LINTECH advised the Court that his client was not the actual employer of the plaintiff. The Court directed that defendant promptly produce information about the entity they contend were the actual employer together with documents to corroborate that contention. (See Exhibit A Doc 12).

Once that assertion was made, plaintiff on February 4, 2019 made request for discovery of any documents defendants may have and sent those requests by email. (See Exhibit B)

By March 4, 2019 letter plaintiff wrote defendants counsel that defendants had not corroborated their contention that had been made to the Court nor had defendants produced not one single document to support that claim or to comply with those further discovery inquiries. (Exhibit C)

That letter also confirmed that so far defendant had only produced one pay stub and 13 payroll reports listing a total of 92.5 hours of work for plaintiff.

Plaintiff long prior to that time and in his Initial Disclosure dated December 21, 2018 identified W2 statements totaling $93,958.34 in his possession that were issued to him from LINTECH and provided defendant copies at that time. (Exhibit D)

The sum total of defendants efforts to comply with the Court's directive to provide "corroboration" that it was not LINTECH but TALICO that was the actual employer was to issue a March 4, 2019  email stating that the "...-Plaintiff's correct employer is TALICO   CONTRACTING   INC." and   identified   NEELAM   CONSTRUCTION CORPORATION as a general contractor (Exhibit E ) and provided addresses where they could be served with  process.

Face with defendants stonewalling tactics, plaintiff requested a pre-motion conference (Exhibit F Doc. 13) to compel defendants to provide records which was held on March 26, 2019. The Court directed the parties to confer as to their discovery disputes. (Exhibit F  Doc 15) The parties failed to resolve their disputes and defendant still provided no further discovery and the Court held another conference on June 27, 2019. Defendant was directed to produce all documents in their possession or be precluded from using documents later produced. (Exhibit G Doc 23)

Depositions proceeded but only after plaintiff was first forced to make a letter motion to the Court to compel defendant to appear on a date certain after defendant repeatedly sought adjournment and only after the Court directed on September 3, 2019 for defendants to appear on September 24, 2019. (Exhibit H Doc 25)

Defendant submitted to deposition on 9/23/19 and defendant LINDEN

TUDOR testified that LINTECH does electrical work for NYCHA projects installing lights and power for the sidewalk sheds (scaffolding place around a building) (Exhibit I page 10-11).

He testified, now close to 1 years later after this case was filed, that all of the defendants' records including bank records, wage stubs, payroll records, tax returns were with NYCHA who was doing a 5 year audit. He testified that he had received a letter in January 2018 from NYCHA, never produced, that would corroborate that assertion. He packed up 10 or more cardboard crates and delivered them to NYCHA. He testified that he sent an email to request the records specifically to GURSEWAK SINGH and they, said they would look into it and they would forward it to defendant. Did he send it in writing? He said no. He communicates by phone and email with them. Did he send an email? Yes. When did he send the email. LAST WEEK. ( Exhibit I pages 158-164). Defendant has never produced a letter from NYCHA concerning the alleged audits, or the email to corroborate those claims

Defendant has never produced a letter from NYCHA concerning the alleged audits, or the email to corroborate those claims. Credibility is strained to think that defendants either actually had such an audit and cannot or will produce confirmation of that fact. The alternative, that defendants were feigning inability to provide records is more likely.

Plaintiff was deposed on 9/24/19 and then again on October 4, 2019. Relevant portions of his deposition transcripts are attached as Exhibit K.

He stated that he did not read English ( Exhibit K page 23); that he talked to

his sister about the case and used her to translate for him. ( Exhibit K page 11).

He testified that TALICO was making the sheds and LINTECH did the electrical work (Exhibit K pages 37-45); because he was the electrician hd did not help to put up the sheds or to take them down (Exhibit K pages 45-46); that while he worked for LINTECH he did not do put up or take down scaffolding ( Exhibit K page 87); that he started working for LINTECH in late 2014 (Exhibit K page 117); even when he did private work for LINTECH he still on did electrical work( Exhibit K page 133); that although he signed time sheets he did not put in the times indicated, that was done on their own (LINTECH) (Exhibit K pages 139-141 and 151-152);

Why did he work and get paid as he described? They said they were gonna "...make me a union card..." (Exhibit K page 160)

His declaration filed confirms all of the above and he states he does not recall being asked to provide his tax records. He did not intend to hide anything.

He was presented with plaintiff's Revised Responses to Defendants First set of Interrogatories that he said that he signed it after it was translated to him by his sister (Exhibit K page 130).

On October 7, 2019 (and only after the defendants deposition and the plaintiffs depositions were held and completed) defendant suddenly decided to exchange more documents by email. (Exhibit L). No explanation was given how or why defendants held back delayed production of these records and why they waited until after the deposition to

do so. The new documents included a 3 page EMPLOYEE DETAIL allegedly prepared by defendants' accountant. (Exhibit M).

When defendants counsel was asked by email about defendant producing any checks issued to the client, rather than respond to that ongoing demand, counsel expressed an attitude of pure obstruction and stated:

Copies of whatever checks were issued to your client should be in your clients possession. Did you ask your client if he has records of any deposited checks?

Counsel also refused to agree to have his client further deposed in view of the new records stating:

We object to any anticipated continued deposition of my client.

But, he did represent as follows:

My client is not in possession of any additional documents.

Counsel's email response also dated October 7, 2019 is attached as Exhibit N.

As to the accountants summary itself, he listed payments to plaintiff in 2016 totaling $36,508.99; for 2017 payments to plaintiff totaling $14,245.27. The accountant reported no payments for 2015 even though LINTECH had issued a W2 for that year. As described later, even the accountants summary does not list the 33 checks claimed by defendants to be issued to plaintiff all dated 1/20/17.

A conference with the Court was held on 11/5/19 at which time defendant announced that still other records had been found and defendant now wanted a further deposition of the plaintiff. The Court stated that since this **second deposition was due to**

**defendants failure to obtain documents from their accountant, that defendant was to bear all costs and provide plaintiff a copy of the transcript** (Exhibit O Doc 30). That deposition has still not been conducted.

In late 2019 the Plaintiff commenced two New York State court actions against defendant LINDEN TUDOR, his wife HOLLY TUDOR and the TUDOR ENTERPRISE FAMILY LIMITED PARTNERSHIP alleging that certain property transfer made by them were fraudulent conveyances based on undisputable facts based on property transfer documents as filed:

Defendants HOLLY TUDOR and LINDEN TUDOR purchased premises at 109-70 133rd Street S Ozone Park New York and have lived there for more than as husband and wife for 30 or more years and then they executed a further deed transferring ownership of those premises solely to defendant HOLLY TUDOR.

Defendant LINDEN TUDOR became the owner of commercial premises located at 1609 Nostrand Avenue/3006 Tilden Avenue in Brooklyn New York and then transferred it to himself and to his wife, defendant HOLLY TUDOR for no consideration and then they transferred it back to LINDEN TUDOR for no consideration and then LINDEN TUDOR obtained a loan of $1,150,000.00 executing a note in that sum that was secured by a mortgage on those premises and then

deed the property TUDOR ENTERPRISE FAMILY LIMITED PARTNERSHIP.

LINDEN TUDOR, the defendant in this action, essentially removed his name as owner of the only two pieces of real property that he is known to have had an interest in and by doing so he disposed of those assets. Such transfers are claimed to be fraudulent to his creditors both present and future (such as this plaintiff) and in violation of among other things New York Debtor and Creditor Law Section 273. The claims are not fictional, they are not without basis and were filed in an attempt to preserve what may be the only assets defendant LINDEN TUDOR may have to satisfy his obligations to the plaintiff.

Defendant removed those state cases to this Court. Amended complaints were filed (Doc 68 and 69). Defendant moved to dismiss (Docs 73-78 and 86). That motion was submitted and is pending Judge Frederic Block.

As part of the opposition submitted in that motion, the plaintiff submitted the Declaration of Steven Bogart (Exhibit P Doc 77-1) who had been retained by plaintiff to look through the growing pile of documents provided by defendants, piece by piece, over the litigation.

He prepared charts evidencing that the records provided by the defendants records were completely inconsistent.

Checks claimed by defendants and provided in discovery totaled $29,914.57 (Exhibit Q Doc 77-2):

The Lintech wage statements alleged to include work of the plaintiff

provided in discovery indicated payments due him of $87,139.42 (Exhibit R Doc 77-2);

Of course, those inconsistent records were both also inconsistent with the W2 statements issued to plaintiff for 2015, 2016 and 2017 provided by plaintiff as part of his Initial Disclosure at the early stage of this case which totaled $93,958.34 See Exhibit D)

In addition, those records were not consistent with the records provided by defendants own accountant that indicated total payments to plaintiff in 2016 ($14,245.27) and in 2017 ($36,508.99) for a total of $50,754.26 but no payment at all for 2015 contrary to the W2 LINTECH issued.

As to certain checks that were eventually provided by defendants, 33 of them are attached as Exhibit S in check number order and total $18,503.03. Each check is payable to Gursewak Singh, has on its reverse side the initials "G.S." written on it but no other markings indicating it being cashed or deposited. THEY ARE ALL DATED JANUARY 20, 2017. THEY ARE ALL WRITTEN MONTHS AND SOMETIMES MORE THAN A YEAR AFTER THE PERIOD OF THE STATED WORK WEEK.

For example, defendants provided check#2406 that defendant stated in the memo that it relates to the work week ending 12/19/15 and that check#2405 was work week ending 1/21/16, a month. An earlier check written for a later week makes no sense.

The reverse side portion of check numbers 2391, 2403 and 2417 all refer to check number 2403 which also makes no sense.

Plaintiff has been shown those checks and confirms in his Declaration submitted that he did not receive them and did not endorse them either. The reverse sides of

those checks give no indication that they were deposited or cashed.

The accountant's records do not who the 33 checks all dated 1/20/17. Frankly nothing about the records defendants have produced so far make sense.

As defendants continued to release more and more records, especially records released after defendants deposition was already taken, the plaintiff requested and the Court granted plaintiff's conducting a further deposition of the defendant. Plaintiff was also to submit to a further deposition. ( Exhibit T Doc 88). Those deposition have not been conducted as all discovery was stayed by the Court pending the determination of this motion. ( Exhibit U Doc 92).

When defendant produced a W2 statement from TALICO issued to the plaintiff and demanded an explanation why it had not been produced by plaintiff, an inquiry was made by counsel and plaintiff was directed to search his records and produce copies of all of his income tax records and provide them to counsel. Those records were obtained and quickly provided to defendants counsel. Revised Responses to Defendants Interrogatories were prepared and issued to counsel together with a further Plaintiff's Reply to the Requests for Document Production.

Plaintiff does not recall whether his attorney every asked him to provide all of this tax records including W2s or 1099s any never intended to hide any of his records. He went to work performing electrical work and signed in and out on the sheets he was presented, did not write in the time records and was promised that if he continues to work he would get in the union. He thought he was working for LINTECH even when the paperwork

said otherwise. He used Harjit Singh as a translator when he would speak to counsel whether in person or over the telephone.

Plaintiff's counsel states in his Declaration that he made inquiry with his client from the time he was retained concerning the client's work history and what records he had about who he worked for, what he was paid, what records he has about his income including whether he worked for TALICO or anyone else. That included requests for tax records, W2 records about TALICO or other companies. Not just once but at various times. Most contact with the client was though the use of a translator, a family member, Harjit Singh. The plaintiff had and still has limited skills speaking and understanding English and little ability to read in English.

Plaintiff's counsel can relate more details about his communications with his client but that would be protected by the attorney client privilege.

A separate lawsuit for Jagdev Singh and Kuldeep Singh in the case Singh v. Kaur et al 19 CV 6927 EDNY was filed by this office for other clients, who were identified in this case as witnesses as they were reported to work side by side at NYCHA with this plaintiff. Their claims were similar to those made by this plaintiff except that they claimed they worked only for TALICO and that the only work they did was to install and remove the scaffolding (sidewalk sheds) at NYCHA work sites. Gursewak Singh would do the electrical work. TALICO was named as a defendant as was the general contractor NEELAM and the reported bonding company. TALICO was served buy never appeared and was in default and

appears to be out of business.

When defendant presented a W2 from TALICO counsel had further conversation with plaintiff and it was now clear that plaintiff needed to produced his tax returns in this case and turn it over to his attorney to provide to defendants.

Since Jagdev and Kuldeep Singh worked day by day doing scaffolding work along side plaintiff who did the electrical work on those scaffolds, a further conversations with those plaintiffs resulted in them producing their tax records that contained W2s from companies other than TALICO.

They had already been deposed and testified about their employment. Their prior testimony and their records exposed certain issues of credibility. They were scheduled to be deposed again. After discussions with those plaintiffs, it was decided with their consent that the case would be discontinued as to the named defendants but that they could still bring a case against TALICO at a future date.

Other conversations took place with those clients but those conversations are also attorney client communications and are privileged.

This plaintiff is prepared to proceed with the second set of depositions and to complete other discovery as needed.

## UNCLEAN HANDS

Defendants stalled and delayed and dribbled out in pieces and only some of the records plaintiff initially requested in discovery demands. Not one single documents was provided concerning the business dealings between defendants and the NEELAM or TALICO. Here, at an initial conference appearance before the Court in January 2019, defendants counsel advises the Court that it is really TALICO that is the actual employer.

That representation once made can only make one wonder what counsel and defendants knew to support that assertion. Surely, defendants would be providing whatever documents or other corroboration there was to verify what counsel has told the Court.

But, that is not what happened. By March 2019 defendants still produced nothing. Plaintiff even served discovery demands to specifically find out from defendants what records existed about any other employer. What did defendants do? Provided Nothing. They did provide an address for TALICO and for NEELAM, said to be the general contractor. So, even though the  the Court had requested it provide corroboration, nothing was provided by defendants.

Still, you would think that since the defendants claimed not to be the actual employer that they would aggressively act to obtain what records existed to prove its representations to the Court. Nothing was forthcoming.

Court intervention was required and the plaintiff advised that defendants had failed to provide any corroborating records and for that matter most of the other

records plaintiff had requested in discovery records. At the first conference call, the Court

directed that try to agree what defendants should produced but that failed. A second

conference call was needed and this time the Court gave defendants a deadline to

produce records by June 27, 2019 or preclusion would occur.

Depositions then took place but only after plaintiff obtained the Court

assistance and an Order compelling defendants to appear on a date certain.

Defendants were deposed on October 4, 2019.

Three days later on October 7, 2019 defendants suddenly chose to send to

plaintiff more of the records plaintiff had requested close to one year prior to then. No

reasonable explanation was given although counsel did represent to the Court that the

records were in the hands of the defendants accountant. No explanation is given why

defendants waited until after the defendants deposition was taken nor why defendant did

not get those records from their own accountant sooner and why it took almost four

months after the preclusion June 27, 2019 deadline set by the Court.

Had defendants then even by then produced a single document to

corroborate that it was TALICO that was the actual employer as claimed? No.

To excuse defendants continued almost complete lack of cooperation and

failure to provide records, defendants testified that NYCHA was conducting an audit of

the defendants and that more than 10 boxes of records were delivered by defendant to

NYCHA in January 2018. When asked why not get those records back, defendants

admitted that the effort consisted of sending an email a week before his deposition.

After the further dump of records on October 7, 2019 it became obvious that defendants would now need to be deposed once again. In fact, defendants asked the Court to direct that plaintiff be directed to appear for further deposition too because now defendants had "found" more of its own records and wanted to use them to ask plaintiff more questions.

As to defendants further deposition, the obstructive behavior of the defendants continued. Defendants counsel refused to agree and objected to that request.

When asked why no checks had yet to be produced showing alleged payment to the plaintiff as was demanded a long time ago, the October 7, 2019 email response from counsel was that it was plaintiff that should check his bank to see about the checks defendants claim were written. He also stated that his client had no other documents. Further obstructive behavior.

Still no production by defendants of any documents evidencing anything about TALICO or NEELAM which would include any contracts the defendants had with either and no document supporting the apparent misrepresentation counsel first made to the Court that it was TALICO that was the plaintiff's actual employer.

Again, here were the defendants having issued W2s to the plaintiff (produced by plaintiff as part of Initial Disclosure in December 2018) denying that it was plaintiff's "actual employer"but failing to produce anything to show otherwise.

Faced with what could only be described as a combative defendant failing to cooperate and seemingly denying the obvious, some investigation revealed that the

defendant LINDEN TUDOR had removed his name from ownership of two pieces of real property, one appearing to be the office location for the defendants, thereby preventing those assets from being used to pay any judgment against the defendants. Transfers without consideration and back and forth between spouses present so called "badges of fraud," which are circumstances that accompany fraudulent transfers so "commonly that their presence gives rise to an inference of intent." Ohana v Levy, 2015 N.Y. Misc. LEXIS 1834, 2015 NY Slip Op 30877 (Sup. Ct. Kings Cty. 2015); 5706 Fifth Ave., LLC v. Louzieh, 108 A.D.3d 589, 590, 969 N.Y.S.2d 141 (2nd Dept. 2013); see also Dempster v Overview Equities, 4 AD3d 495, 498, 773 N.Y.S.2d 71 (2nd Dept. 2004).

Such "badges of fraud" from which fraudulent intent may be inferred include:

(1) a close relationship between the parties to the transaction;

(2) secrecy and haste in making the transfer;

(3) the inadequacy of consideration;

(4) the transferor's knowledge of the creditor's claim, or a claim so likely to arise as to be certain, and the transferor's inability to pay it; and,

(5) the retention of control of property by the transferor after the conveyance.

See Matter of Steinberg v Levine, 6 AD3d 620, 621, 774 N.Y.S.2d 810 (2nd Dept. 2004); Dempster v Overview Equities , 4 AD3d at 498; Board of Mgrs. of 14 Hope St. Condominium v Hope St. Partners, LLC, 40 Misc 40 Misc. 3d 1215[A], 975 NYS2d 708, 2013 NY Slip Op 51201[U] (Sup Ct, Kings Cty. 2013).

The Second Circuit has identified other examples of "badges," including

"the financial condition of the party sought to be charged both before and after the transaction in question,

the existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors," and

"the general chronology of events and transactions under inquiry."

Salomon v. Kaiser, 722 F2d 1574, 1582- 83 (2nd Cir. 1983); Chapin Home for the Aging v. McKimm, 2014 U.S. Dist. LEXIS 132545( EDNY 2014).

The follow up deposition of the plaintiff and of the defendants has been stayed while this motion is pending.

That plaintiff has now produced his tax records in full is undisputed and would make an excellent topic for questioning by the defendants at plaintiffs second deposition.

How and why defendants suddenly "found" only one document from TALICO, a W2 and only close to two years after this case with false representation to the Court by defendant that is was not plaintiff's employer is an unexplained mystery that must make this Court wonder how that came about.

For the defendants to claim prejudice or surprise in learning of a W2 from TALICO issued to plaintiff is a little like the famous line from Casablanca wherein Captain Renault is shocked, shocked to learn that there is gambling going on while

receiving and then pocketing his winnings.

Finally, there is clearly nothing about plaintiffs claims that he was not paid what he should have been paid that is not without basis, brought to harass or delay.

The bizarre and irreconcilable information set forth in the records that defendants have only reluctantly released are filed with contradictions whether it be 33 checks all dated 1/20/17; earlier number checks paying work performed later after later dated checks were issued for earlier dated work periods; accountants records missing year 2015 and missing the 33 checks all dated 1/20/17; those checks covering work periods sometimes more than one year earlier; several checks with the same checks numbered on the reverse side; checks that do not even appear to have been cashed.

Defendants have misled this Court in rejecting their obligation as plaintiff's employer.

Section 28 USC 1927

By this provision, a Court may require an attorney to pay "excess costs, expenses, and attorney's fees reasonably incurred..." because of multiplying the proceedings in any case by "unreasonable and vexatious behavior."

Based on the motion papers, there has been absolutely no showing that any excess attorneys fees have been necessarily incurred. All of the proceedings to date have been reasonable and related to the issues in dispute. The obstructive and vexatious tactics of defendants counsel as documented herein has resulted in a docket sheet containing numerous letters, application and conferences conducted solely to get defendant to

comply.

This motion is devoid of any proof offered by defendant to show any excess costs expenses or attorneys fees incurred.

Had any presentation been made to describe the details of such excess costs etc. then plaintiff would have been able to refute those claims.

At this stage, defendants have the right to depose plaintiff again and that was because defendants wanted to do that when they found more of their own records. Now, at that deposition, plaintiff can be questioned about the tax returns and other records and any other matter.

That is a deposition caused, in most part, by defendants own failure to get its own records in a timely manner from its own accountant, assuming the Court accepts that assertion.

## FRCP Section 37

The provisions of Section 37 spell out various sanctions that can be imposed when a party fails to obey a Court Order. The thrust of the stated disobedience by plaintiff is the failure to produce his tax returns earlier in the proceeding. As both the Declaration of the plaintiff and the undersigned indicate, plaintiff does not recall being asked to produce his tax records, counsel states that such request was made more than once and at various times. There are further details that counsel can relate about what communications he had with his client but they are privileged but can be submitted to the Court sealed and ex parte as necessary.

Communication with counsel and the plaintiff was restricted by his limited ability to understand English, many conversations and office conferences included Harjit Singh, family member, as translator. The plaintiff has state that it was never his intention to hide any of his records. There is no proof of any wilfulness.

Defendants were not "sandbagged" by anything. From the beginning defendants defended the case making the claim that it was TALICO that was the actual employer when documents produced by defendants only after great effort confirmed that, at the very least, defendants had employed plaintiff and given him W2s.

The sandbagging is more likely the reverse, defendants knew that they had a W2 statement from TALICO and only offered it to make claim that they were "shocked to learn..."

The source of and the 11th hour production of the document is not explained. Only one document obtained? From whom? When was it obtained? Defendants do not tell.

Plaintiff will now be deposed and confronted about what other employers and to the extent that effects his credibility and changes the amount he is due for unpaid wages etc. is a matter for the trier of fact to decide.

There is no evidence of bad faith, just poor communication between counsel and his client and/or the translator used.

Defendants have not presented to the Court any specific example of any portion of what has been a long and drawn out discovery process, caused by defendants obstructions and delays, that demonstrated any pre-trial matter conducted that would not

have been conducted if plaintiff's tax returns were exchanged sooner.

## FRCP 26

The defendants demand sanctions as against both the plaintiff and his counsel based on the claim assuming that there was no reasonable inquiry made by counsel that should have led to earlier disclosure of the tax records and related documents and that TALICO and others also paid plaintiff. The representations made by the undesigned in his Declaration confirm that inquiries were made with the client for such records even though plaintiff does not remember that happening. Plaintiff also indicates it was certainly not his intention to hide anything. There is no wilfulness on the part of either counsel or plaintiff.

As conversations with counsel and his client are privileged, counsel can supplement his Declaration but as it concerns the client it should be submitted ex parte and sealed. To the extent the Court wishes more information that can be submitted however it would appear to create a conflict in counsel defending himself and at the same time representing the interests of his client. But, this matter is not something that occurred wilfully, just by poor communication even after reasonable inquiries were made.

The sanction set forth in the language of Rule 26 is to direct payment of reasonable expenses including attorneys fees cause by any violation. But, as described above, there has been no expense incurred by defendants that would not otherwise have been or will be caused to occur.

Defendants in this motion use the word prejudice often but never offer any

details to support that assertion. Every discovery demand and procedure used by plaintiff would have been used even if plaintiff was paid by others in addition to the defendants. The same for whatever discovery demands were made by defendants.

It was the defendants that stifled and delayed and refused to disclose records starting from their wilful and deliberate effort to tell the Court that it was TALICO that was the actual employer knowing full well that he worked for defendants. The follow up was the repeated efforts plaintiff needed to make to first demand, then obtain Court intervention then Court directives to have defendants provide discovery, such production limited at best.

Perhaps the primary example of such wilful tactics by defendants and their counsel was to dump on Monday October 7, 2019 more records but only after completionof defendants deposition taken the preceding Thursday. Such timing smacks of wilfulness and harassment and a concerted effort to delay and stifle effective discovery.

It is obvious that defendants have acted in a deliberate manner to obstruct this case from having completed discovery long ago.

That plaintiff may not have only been paid by defendants does not excuse the failure of the defendants to produce missing records, to produce records that are impossibly inconsistent, to produce those records that smack of falsehood ( checks issued out of Order for work schedules in reverse order with false reverse sides showing the same check number for several, an accountant's records that suddenly appeared and even still do not reflect the questionable stack of 33 checks all issued on the same date for

work allegedly performed more than one year prior.

Plaintiff has offered justification and a reasonable explanation for the delay in disclosure.

## PLAINTIFF'S MERITORIOUS CAUSE OF ACTION

Plaintiff worked for the defendants and now, more than 2 years after this lawsuit was filed, defendants have still not produced records demonstrating that plaintiff was paid as defendants claim. 33 checks made payable to Gursewak Singh were not received by him, are incredibly all dated the same date and on reverse side show no evidence of having even been cashed or deposited anywhere. Accountants records are in conflict with check records that are in conflict with bank records are in conflict with payroll reports.

As to other records still not delivered, are we really to believe that NYCHA has kept them this long for an audit? What is clear is the defendants have made no reasonable effort to obtain copies other than to send an email.

What amount of damages plaintiff may be due is for the trier of fact. If defendant needs to spend more time asking plaintiff questions at his previously scheduled second deposition because of the late disclosure of the tax records let him do so and the demonstrate to the Court that such extra costs have occurred and that claim can be held in abeyance until such time as the case is concluded and the sums due plaintiff from defendants are defined and paid. Defendants, if entitled to any compensation for extra costs can use it to offset plaintiff's entitlement of damages.

CONCLUSION

The pending motion should be denied and the stay lifted and the parties

directed to compete discovery.

Dated: March 12, 2021

Respectfully submitted

JONATHAN SILVER