UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GURSEWAK SINGH,

                    Plaintiff,

     -against-

LINTECH ELECTRIC, INC. and
LINDEN J. TUDOR,

                Defendants.
-------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**18 CV 5780 (FB)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff brings this action alleging that defendants, among other things, failed to pay him minimum wage, overtime wages, and failed to provide him wage notices and statements in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq., and the New York Labor Law ("NYLL"), N.Y. LAB. LAW § 190 et. seq., while he was employed as an electrician. Compl, ¶¶ 1, 8, ECF No. 1. Plaintiff now moves to amend his complaint to add a claim of untimely payment of wages under NYLL § 191. ECF Nos. 118-119. Defendant moves for an award of attorney's fees related to the Court's imposition of sanctions against plaintiff's counsel. ECF No. 117. For the reasons set forth below, it is respectfully recommended that plaintiff's motion to amend should be denied. Defendants are awarded $15,591.67 in attorney's fees and costs of $36 as a sanction for plaintiff's counsel's discovery violations.[1]

---

[1] An award of attorney's fees as a sanction is a non-dispositive issue. See Linde v Arab Bank, PLC, No. 04-CV-2799(BMC)(PK), 2020 WL 5200924, at *1 n.1 (E.D.N.Y. Sept. 1, 2020) (citing Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co., No. 15-CV-2926(DRH)(SIL), 2020 WL 1242616, at *4 (E.D.N.Y. Mar. 16, 2020)) ("There is little question that a sanctions motion is a non-dispositive pre-trial matter.").

## BACKGROUND AND PROCEDURAL HISTORY

The facts and procedural history of this matter are discussed at length in my prior Report and Recommendation, R&R, ECF No. 109, with which the Court assumes the parties' familiarity. The Court briefly summarizes the relevant facts and proceedings for the instant motions.

This action dates back to October 2018 when plaintiff commenced this case. Compl., ECF No. 1. As alleged in the complaint, defendants employed plaintiff as an electrician from the fall of 2014 through the middle of September 2018. Id. ¶ 8. During the week, from Monday through Friday, plaintiff worked at various New York City Housing Authority ("NYCHA") locations and on the weekend, he worked at both NYCHA and non-NYCHA properties. Id. Plaintiff generally worked from 8:00 a.m. until about 6:00 p.m. or 7:00 p.m. and was paid between $700 and $800 a month in cash. Id. Although plaintiff worked over forty hours a week, he alleges that defendants did not pay him the overtime premium of one- and one-half times his normal rate for each hour worked in excess of forty hours a week. Id. ¶ 16. Defendants also failed to provide accurate wage statements detailing plaintiff's hours worked and wages received. Id. ¶ 20. Based upon these facts, plaintiff asserted claims for unpaid overtime under both federal and state law, a claim for tax fraud, and a claim for failure to provide wage statements. Id. ¶¶ 21-41.

As recounted in my prior Report, this litigation has been rife with acrimony and riddled with disputes. From the start, defendants have argued that another entity, not defendant Lintech Electric Inc., was plaintiff's actual employer. See Minute Entry dated Jan. 30, 2019, ECF No. 12. Magistrate Judge Gold, then assigned the case, ordered defendants to produce information regarding this contention and ordered plaintiff to file an amended complaint or a status report

explaining his position. Id. Plaintiff accused defendants of failing to provide required discovery and defendants filed a discovery motion of their own. ECF No. 13, 20. The parties' inability to resolve their dispute amicably necessitated Court intervention and the Court set specific deadlines for document production and depositions. See Minute Order dated June 27, 2019, ECF No 23. Multiple extensions of time were requested and granted. See Electronic Orders dated Sept. 3, 2019, Sept. 6, 2019; Minute Entry dated November 5, 2019, ECF No. 30.

The record was further muddled by the filing in state court and eventual removal to this Court of two fraudulent conveyance actions in December 2019 and January 2020. ECF Nos. 32, 39. Discovery regarding the FLSA claims continued while the parties dueled about whether the removed actions should be remanded or dismissed. See ECF Nos. 40-49. The parties continued to accuse each other of failing to timely produce discovery and cross-moved for sanctions. See ECF Nos. 43-47. Judge Gold denied the parties' sanctions applications but reopened document discovery, revising the schedule for the parties to complete discovery. See Minute Entry dated Feb. 6, 2020, ECF No. 50; Electronic Order dated Mar. 2, 2020. The parties were directed to file a joint pre-trial order by May 18, 2020 and a final pre-trial conference was to be held on May 28, 2020. Electronic Order dated Mar. 2, 2020.

The parties' discovery disputes persisted which required further Court intervention. In June 2020, plaintiff accused defendants of violating a protective order and defendants were ordered to supplement their discovery responses. See Minute Entry dated June 29, 2020, ECF No. 83. Plaintiff was later ordered to respond to defendant's discovery demands and the Court scheduled dates for additional depositions. See Minute Entry dated Sept. 22, 2020, ECF No. 8.

Tensions came to a head in October 2020 when defendants filed a letter moving for sanctions based on plaintiff's belated production of relevant discovery. See ECF No. 89. This

discovery included plaintiff's W-2 form from Talico Contracting Inc., an entity that defendants asserted was plaintiff's actual employer. Id.; ECF No. 99-13; Mizrahi Decl ¶ 8, ECF No. 125. Plaintiff's production also included tax documents demonstrating his employment by various other entities during the time he alleged he was working in excess of forty hours a week for defendants. See ECF No. 89.

Judge Gold held a telephone conference regarding these revelations. See Minute Entry dated Oct. 29, 2020, ECF No. 92. At the conference, Judge Gold expressed his concern regarding the delayed disclosure of plaintiff's employment records. Oct. 29, 2020 Tr. 2:7-9 ("I received a rather remarkable letter from [defendant's counsel."). The Court asked counsel how plaintiff's overtime claims could have merit when he had multiple other employers during the period he claimed he worked for defendants. Oct. 29, 2020 Tr. 4:18-25 ("Why did he file this lawsuit claiming he was working overtime, when clearly he couldn't possibly have been if he had 17 other employers?"). The Court stayed all discovery and set a schedule for defendants' sanctions motion. Minute Entry dated Oct. 29, 2020.

This matter was reassigned to me and I was referred defendants' motion for sanctions. See Docket Entry dated Jan. 7, 2021; Electronic Order dated Jan. 11, 2021. While the motion for sanctions was *sub judice*, Judge Block granted defendants' motion to dismiss the two fraudulent conveyance matters that had been removed from state court. Mem. & Order, ECF No. 104. I issued a Report recommending that defendants' motion for sanctions should be granted in part and denied in part. R.&R., ECF No. 109. I found that plaintiff's counsel had failed to conduct a reasonable inquiry regarding his prior responses to defendants' discovery demands. Id. at 16. I

further recommended that plaintiff's counsel should be required to pay the reasonable expenses resulting from his discovery violation.[2] Id. at 25.

Following the adoption of my Report and Recommendation, ECF No. 112, I held a conference with the parties to determine what discovery remained outstanding, see Electronic Order dated Sept. 8, 2021. During the conference, plaintiff's counsel raised that defendants had issued thirty-three checks to plaintiff on a single day in January 2017 as compensation for work completed over the prior years. See ECF No. 116; Sept. 23, 2021 Tr. 4:14-17, ECF No. 123. Plaintiff's counsel stated that he may seek to raise a claim of untimely payment "in the alternative" to the claims previously asserted in the initial complaint. Sept. 23, 2021 Tr. 5:16-18. The Court stated that plaintiff would need leave to amend the complaint and pressed counsel about why he was first raising this issue at such a late juncture. Sept. 23, 2021 Tr. 9:8-13. In response, counsel stated "the claim of untimely payments is something that I just, frankly, discovered is a claim." Sept. 23, 2021 Tr. 21-23.

At the conclusion of the conference, I set deadlines for plaintiff's motion to amend and defendants' application for attorney's fees regarding the sanctions motion. ECF No. 116. Plaintiff now moves to amend, ECF Nos. 118-119, and defendants move for attorney's fees. Defs.' Oct 8, 2021 Letter, ECF No. 117.

In an effort to resolve this case holistically, I held a settlement conference on January 6, 2022. See Electronic Order date Jan. 6, 2022. Despite several hours of discussion with the parties and their counsel, the parties were unable to reach a resolution.[3] Id.

---

[2] My Report recommended that defendants' request that the action be dismissed should be denied as dismissal would be too harsh a sanction when the violations at issue were attributable to plaintiff's counsel and there were real questions about counsel's communication with his client who speaks another language. R.&R. 22-23

[3] The January 6, 2022 settlement conference was the latest effort to resolve this case. Judge Gold previously scheduled a settlement conference, but plaintiff failed to appear. See Minute Entry dated Nov. 5, 2019, ECF No. 30; Defs' Mem. of Law in Supp. of Sanctions 35, ECF No. 98. The Court also previously encouraged the parties to

In support of his motion to amend, plaintiff provides his counsel's affirmation (Silver Aff., ECF No. 119-1); a Memorandum of Law (Pl.'s Mem. of Law, ECF No. 119-2); copies of checks drawn on defendant Lintech's bank account and made payable to plaintiff (Pl.'s Ex. 1, ECF No. 119-3); copies of Lintech Wage Statements (Pl.'s Ex. 2, ECF No. 119-4); and a proposed amended complaint (Proposed Am. Compl., ECF No. 119-5). In opposition, defendants provide: a Memorandum of Law (Defs.' Mem. of Law, ECF No. 124); defendants' counsel's declaration (Mizrahi Decl., ECF No. 125), and several exhibits (Exs. A-P, ECF Nos. 125-1 through 125-16). Plaintiff filed a Reply (Reply, ECF No. 128) and several exhibits (ECF Nos. 128-1 through 128-9).

Regarding defendants' motion for sanctions that was granted, defendants seek attorney's fees totaling $24,512.50 and $88.70 in costs. Defs.' Oct 8, 2021 Letter 7, ECF No. 117. In addition to the letter in support of their application, defendants provide: a copy of counsel's retainer agreement (Retainer Agreement, ECF No. 117-1); contemporaneous billing records (Billing Records, ECF No. 117-2); and invoices for costs and disbursements (Cost Invoices, ECF No. 117-3). Plaintiff opposes portions of defendants' fee request. Pl's Opp., ECF No. 126. Defendants filed a Reply letter. Defs.' Reply, ECF No. 127.

---

pursue Court-annexed mediation, see Minute Entries dated Nov. 5, 2019; June 29, 2020, but the parties declined that opportunity, see Pl.'s July 10, 2020 Letter, ECF No. 85.

## DISCUSSION

### I. Plaintiff's Motion to Amend

### A. Legal Standard

Motions to amend a pleading are governed by Federal Rules of Civil Procedure 15 and

16. Sacerdote v. New York Univ., 9 F.4th 95, 115 (2d Cir. 2021). Rule 15(a)(1) sets forth when a

pleading may be amended as of right and Rule 15(a)(2) provides the standard to be applied when

an amendment requires leave of Court. Id. Rule 15(a)(2) requires the Court to "freely give leave

when justice so requires." After the Court has issued a scheduling order setting a deadline to

amend the pleadings, a post-deadline amendment application must satisfy the "good cause"

requirement of Rule 16(b)(4). Id.

Even when Rule 15(a)(2)'s liberal standard is applied, leave may still be denied "for good

reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Platt

v. Inc. Vill. of Southampton, 391 Fed. Appx. 62, 66 (2d Cir. 2010) (summary order) (quoting

Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009)); see also Ruotolo v. City of New York,

514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). An

amendment is considered futile when it would not survive a motion to dismiss for failure to state

a claim. Bohnet v. Valley Stream Union Free Sch. Dist. 13, 30 F. Supp. 3d 174, 179 (E.D.N.Y.

2014) (quoting Kirk v. Heppt, 423 F. Supp. 2d 147, 149 (2d Cir. 2006)). Ordinarily, delay alone

is not a sufficient reason to deny a motion to amend. Kalyna v. City of New York, No. 16-CV-

273(AMD)(CLP), 2018 WL 1342488, at *7 (E.D.N.Y. Feb. 28, 2018). However, a District Court

has discretion to deny a motion to amend "made after an inordinate delay, [when] no satisfactory

explanation is offered for the delay, and the amendment would prejudice other parties, or where

the belated motion would unduly delay the course of proceeding by, for example, introducing

new issues for discovery." Id. (internal quotation marks omitted) (quoting State Farm Ins. Cos. V. Kop-Coat, Inc., 183 Fed. Appx. 36, 37-38 (2d Cir. 2006)). This is true even when a proposed amendment states valid causes of action. See Lamothe v. Town of Oyster Bay, No. 08-CV-2078(ADS)(AKT), 2011 WL 4974804, *12 (E.D.N.Y. Oct. 19, 2011).

"The burden to explain a delay is on the party that seeks leave to amend." McCulloch v. Town of Milan, No. 07 Civ. 9780(LAP)(RLE), 2009 WL 3326638, *2 (S.D.N.Y. Oct. 15, 2009) (quoting Satcom Intern. Grp. PLC v. ORBCOMM Intern. Partners, L.P., No. 98 Civ. 9095(DLC), 2000 WL 729110, at *23 (S.D.N.Y. June 6, 2000)). Any burden on the nonmoving party to show prejudice will decrease as the period of unexplained delay increases. Block v. First Blood Assocs., 988 F.3d 344, 350 (2d Cir. 1993) (quoting Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983)). In examining the potential prejudice, Courts "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent plaintiff from bringing a timely action in another jurisdiction." Id. (citation omitted).

Whereas a motion to amend a complaint may be considered a non-dispositive motion when granted, see Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007); Bonilla v. City of New York, No. 20-CV-1704(RJD)(LB), 2020 WL 6637214, at * 2 (E.D.N.Y. Nov. 12, 2020) (citing Louis v. Metro Transit Auth., No. 12-CV-6333(ILG), 2014 WL 5311455, at *1 (E.D.N.Y. Oct. 16, 2014)), the motion is dispositive when denied, see Bonilla, 2020 WL 6637214, at * 2 (citing Sokol Holdings Inc. v. BMB Munai, Inc., No. 05-CV-3749(KMW), 2009 WL 3467756, at *3-4 (S.D.N.Y. Oct. 28, 2009)). Therefore, this Report and Recommendation is made in accordance with 28 U.S.C. § 636(b).

**B. The Interplay of Rules 15(a)(2) and 16(b)**

The Court must first determine whether the instant application is governed by Rule 15 or Rule 16. As to be expected after over three years of consistent battle, the parties disagree regarding whether plaintiff's application is governed by Rule 15 or 16. <u>Compare</u> Pl.'s Mem. of Law 9[4] (discussing Rule 15(a)) <u>with</u> Defs.' Mem. of Law 16-18 (stating that Rule 16(b) should apply). Plaintiff's papers omit any discussion of Rule 16(b), simply stating that leave to amend should be freely given and arguing that defendants' discovery delays prevented any prior amendment. Pl.'s Mem. of Law 9. Defendants, pointing to Judge Gold's January 30, 2019 scheduling order, counter that Rule 16(b)'s less permissive "good cause" standard applies because plaintiff failed to amend his complaint prior to the deadline set by the Court. Defs.' Mem. of Law 16.

The Second Circuit instructs that "litigants are entitled to rely on the meaning suggested by the plain language of a court order." <u>Sacerdote</u>, 9 F.4th at 115. In <u>Sacerdote</u>, the Second Circuit found the District Court erred in denying a motion to amend when it applied Rule 16(b)'s "good cause" standard rather than the more liberal standard of Rule 15(a). <u>Id.</u> The scheduling order at issue there stated: "Amended pleadings may not be filed, and no party may be joined, without leave of Court more than 10 days after the filing of this Order or the filing of a responsive pleading, whichever occurs first." <u>Id.</u> at 114. The Circuit found this language "set no expiration date after which all amendments were prohibited," a prerequisite to the application of the Rule 16(b) "good cause" standard. <u>Id.</u> at 115.

In the instant matter, the scheduling order at issue states in pertinent part: "Plaintiff will file an amended complaint, on consent, or submit a written status report indicating how he

---

[4] Plaintiff's Memorandum of Law does not contain page numbers. For ease of reference, the Court refers to the ECF pagination.

intends to proceed with this action, by March 22, 2019." Minute Entry dated Jan. 30, 2019, ECF No. 12. The record makes plain that the Court issued this Order in the context of the parties' dispute regarding plaintiff's true employer. Id. In fairness to plaintiff, the Court's order cannot be read as setting a firm deadline for amendment. For that reason, the Court looks to Rule 15(a)(2) rather than Rule 16(b) in reviewing plaintiff's instant motion.


### C. Unexplained Delay and Prejudice

Even assuming that the proposed amended complaint states a claim for relief, leave to amend may still be denied when there has been undue delay, without a "satisfactory explanation," and the nonmoving party will be prejudiced or the proceedings unduly delayed. See State Farm Ins. Cos., 183 Fed. Appx. at 37-38 (quoting Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000)). When a claim could have been previously asserted, and the delay is unexplained, the opposing party is prejudiced when an amendment will cause it to incur "additional time and expense to respond to a claim that should have been before the court" earlier. See Farricker v. Pension Dev., Inc., 513 Fed. Appx. 47, 48-49 (2d Cir. 2013) (summary order) (quoting Williams v. Citigroup Inc., 659 F.3d 208, 212 (2d Cir. 2011)).

The parties offer conflicting explanations for plaintiff's delay in filing the instant application. Plaintiff suggests that he was unaware of the grounds for an untimely payment claim until after receiving records – including thirty-three checks made payable to him – produced by defendants in discovery. Pl.'s Mem. of Law 5. Defendants counter that plaintiff previously possessed these checks and deposited them into his bank account. Defs.' Mem. of Law 19. Defendants further argue that, even if plaintiff did not previously possess the checks, he has had them since they were produced to him in December 2019, almost two years before the current

motion. Id. Neither party refers to plaintiff's counsel's statement on the record at the September 23, 2021 court conference that "the claim of untimely payments is something that I just, frankly, discovered is a claim." Sept 23, 2021 Tr. 21-23.

Plaintiff's explanation for the delay in the instant motion is unpersuasive. As defendants point out, plaintiff has possessed the records at issue since at least December 2019. Defs. Mem. of Law 19; Mizrahi Decl. ¶ 3. Indeed, plaintiff acknowledged possession of these checks in January 2020 when he filed a motion for an extension of time to complete discovery and to compel production of certain records. Pl.'s Jan. 27, 2020 Letter, ECF No. 43. In that application, plaintiff's counsel wrote "[m]y client was presented by this office with the checks written to his name and denies he received or initialed the checks on the reverse side." Id. at 3. Several of the checks were also appended to plaintiff's application as exhibits. See ECF Nos. 43-7 through 43-8. Plaintiff now provides copies of the checks giving rise to his proposed untimely payment claim, including copies of the checks attached to his January 2020 motion. ECF No. 119-3. The notations on several of these checks reflect that they are payment for work which allegedly occurred months, if not years, before the checks were issued. See id. For example, check numbers 2390 through 2421 were all issued on January 20, 2017, but relate to work which occurred in 2016. Id. at 10-42. Plaintiff previously attached these records to his March 2021 opposition to defendant's motion for sanctions. ECF No. 102-21. The record is clear that plaintiff possessed the checks in question for a considerable amount of time, at least 22 months, before he moved to amend. Although plaintiff now seeks to blame his lack of diligence on defendant's belated production of records, the Court cannot credit this explanation. Plaintiff had ample time to move to amend. The Court need not speculate as to why plaintiff failed to timely move; plaintiff's counsel provided that explanation when he stated that "the claim of untimely

payments is something that I just, frankly, discovered is a claim." Sept. 23, 2021 Tr. 21-23. Plaintiff's counsel admits that he was unaware of N.Y. Labor Law § 191, the statute giving rise to a cause of action for late payment of wages.

Plaintiff's counsel's ignorance of the law is not a satisfactory excuse for his delay in seeking leave to amend. See Port Auth. Police Benevolent Assoc. v. Port Auth. of N.Y. & N.J., 283 F. Supp. 3d 72, 93 (S.D.N.Y. 2017) (quoting Cresswell v Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) ("Courts are 'free to conclude that ignorance of the law is an unsatisfactory excuse' for delay in requesting leave to amend."). That counsel was previously unaware of N.Y. Labor Law § 191(a) is not a basis for granting the motion. See Cresswell, 922 F.2d at 72 (affirming the denial of a motion to amend when counsel's only explanation for the delayed amendment was that he was "unaware" of the statute). This ignorance would engender a substantial delay in the proceedings, a factor which other Courts have relied upon when denying motions to amend. See e.g., U.S. Small Bus. Admin. V. Feinsod, No. 17-CV-3586(JS)(SIL), 2021 WL 707079, at *6 (E.D.N.Y. Feb. 4, 2021) (citing Pkfinans Int'l Corp. v. IBJ Schroeder Leasing Corp., No. 93-CV-5375, 1996 WL 84481, at *2 (S.D.N.Y. Feb. 27, 1996)) (Discussing the denial of an amendment when the moving party knew of the facts underlying a proposed new claim "at least a year before" seeking leave to amend); Amusement Inds., Inc. v. Stern, No. 07 Civ. 11586(LAK)(GWG), 2014 WL 4460393, at *11 (S.D.N.Y. Sept. 11, 2014) (denying a motion to amend made about 18 months after counsel became aware of the facts supporting amendment). Plaintiff's counsel's failure to reasonably investigate his client's claims and the full extent of the records in his client's possession has already resulted in an award of sanctions. See R.&R., ECF No. 109.

The Court must also be mindful of the prejudice to be incurred by defendants if plaintiff is permitted to amend his complaint at this late stage of the proceedings. The Second Circuit has "referred to the prejudice to the opposing party resulting from a proposed amendment as among the "most important' reasons to deny leave to amend." AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010) [hereinafter AEP Energy] (citing State Teachers Ret. Bd. V. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)). An amendment may be prejudicial when it alters the legal theory of a case and will have a "substantial impact" on existing proceedings. See Werking v. Andrews, 526 Fed. Apps. 94, 96 (2d Cir. 2013) (summary order) (citing AEP Energy, 626 F.3d at 727). Any prejudice analysis must also consider the additional resources to be expended on future discovery and whether amendment will "significantly delay the resolution of the dispute." See Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 174 (S.D.N.Y. 2014) (quoting Ruotolo, 514 F.3d at 192); see also Portelos v. City of New York, No. 12-CV-3141(RRM)(VMS), 2015 WL 5475494, at *2 (E.D.N.Y. Sept. 15, 2015) (citing MHANY Mgmt. Inc. v. Cnty of Nassau, 843 F. Supp. 2d 287, 341 (E.D.N.Y. 2012)) (stating that delay in final resolution of a matter may prejudice an opposing party).

In opposing plaintiff's motion to amend, defendants claim they will suffer prejudice should the application be granted. Defs.' Mem. of Law 20. They recount that plaintiff has already been deposed twice and defendant has been deposed once. Id. Defendants also explain that discovery, a years' long process in this case, has been exclusively focused on plaintiff's claims that he was never paid for his work. Id. They suggest that the amendment, adding the proposed claim would unfairly "restart" the discovery process. Id. at 21.

The Court agrees that amendment will further delay the resolution of this matter – which has already been delayed by discovery disputes and requests for sanctions. If the motion is granted, discovery will again have to be extended with additional paper requests and depositions likely. See Amusement Inds., Inc., 2014 WL 4460393, at *12. The Court is cognizant that "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." Fresh Del Monte Produce, Inc., 304 F.R.D. at 174 (quoting Christians of Cal., Inc. v. Clive Christian N.Y., LLP, No. 13 Civ. 0275(KBF)(JCF), 2014 WL 3605526 at *5 (S.D.N.Y. July 18, 2014). However, context is important.

This litigation has been uniquely protracted. The initial case conference occurred over three years ago, see Minute Entry dated Jan 30, 2019, and the discovery deadlines have been set, reset, and reset again. On June 27, 2019, Judge Gold set a July 2019 deadline for defendants to produce "all documents in their custody" and for plaintiffs to confirm that that they had not withheld any responsive documents. Minute Order dated June 27, 2019, ECF No. 23. The Court also scheduled dates for plaintiff and defendants' depositions. Id. The deposition schedule was later extended on September 3, 2019, September 6, 2019, September 24, 2019, and November 5, 2019. See Electronic Orders dated Sept. 3, 2019, Sept. 6, 2019, Sept. 24, 2019, and Nov. 5, 2019. Following a failed settlement conference, Judge Gold ordered the parties to file a joint pretrial order by January 31, 2020 – over two years ago. See Minute Entry dated Nov. 5, 2019. Defendant then removed the two fraudulent conveyance actions from state court. See ECF Nos. 32, 39. Judge Gold once again set a revised deposition schedule as well as a new deadline for filing the joint pretrial order (March 18, 2020) and noted that discovery was otherwise closed. See Minute Entry dated Jan. 15, 2020, ECF No. 40. Discovery was then reopened in February 2020. see Minute Entry dated Feb. 6, 2020. Judge Gold set a new deadline for the completion of

discovery and scheduled a "Final Pretrial Conference" for May 28, 2020. See Electronic Order dated Mar. 2, 2020. As with the previous deadlines, the parties were unable to complete discovery within the stated period and more extensions were requested and granted. See Minute Entry dated June 29, 2020, ECF No 83; Minute Entry dated Sept. 22, 2020, ECF No. 88. Discovery was then stayed in October 2020 following the revelation that plaintiff had failed to provide relevant employment records. See Minute Entry Oct. 29, 2020, ECF No. 92.

Enough is enough. Any amendment at this stage will prejudice defendants, require additional discovery, and cause more delay. See Stone v. Courtyard Mgmt. Co., No. 99 Civ. 4780 (LTS)(KNF), 2001 WL 395159, at *2 (S.D.N.Y. Apr. 17, 2001) ("Plaintiff's motion comes far too late in the life of this case".). The time has come for this battle to end. See McCulloch, 2009 WL 3326638, *3 ("There has to be some endpoint to discovery and litigation in any matter."). Accordingly, I recommend that plaintiff's motion to amend should be denied.

## II. Defendant's Fee Application

My prior Report recommended that plaintiff's counsel should be required to pay the attorney's fees incurred by defendants "as a result of plaintiff's failure to timely produce discovery" as a sanction. R.&R. 25, ECF No. 109. I further explained that the fee award "should encompass the fees charged by defendants' counsel in their effort to obtain the requested discovery, including the preparation and service of deficiency letters, attending discovery related conferences, and the filing of the [sanctions] motion." Id. (citing Juanjun Chen v. 2425 Broadway Chao Rest., LLC, 331 F.R.D. 568, 574-75 (S.D.N.Y. 2019)). Judge Block adopted my Report and Recommendation. Sept. 1, 2021 Mem. & Order, ECF No. 112. Defendants were ordered to file their fee application, supported by billing records. See Electronic Order dated

15

Sept. 23, 2021, ECF No. 116. The determination of the proper fee to be awarded as a sanction for prior discovery violations is a non-dispositive issue which is properly decided by a Magistrate Judge. Capricorn Mgmt. Sys., Inc v. Gov't Emps. Ins. Co., No. 12-CV-2926(DRH)(SIL), 2020 WL 1242616, at *4 (E.D.N.Y. Mar. 16, 2020) (citing Errant Gene Therapeutics v. Sloan-Kettering Inst. For Cancer Research, 768 Fed. Appx. 141, 142 & n.1 (2d Cir. 2019 (summary order)) ("[A] magistrate judge has authority to issue award of attorney's fees as a Rule 37 sanction….").

Defendants request attorney's fees of $24,512.50 and costs of $88.70 as a sanction for plaintiff's counsel's discovery violations. Defs.' Oct 8, 2021 Letter 7, ECF No. 117. They provide contemporaneous records in support of their request. Id. at 2-5. Plaintiff opposes the requested amounts, challenging the methodology employed to calculate the total fees and stating that the total amount requested is excessive. Pl's Opp., ECF No. 126. Defendants filed a Reply. Defs.' Reply, ECF No. 127.

In this Circuit, "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" See Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir 2011) (citing Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty of Albany, 522 F.3d 182, 183 (2d Cir. 2008) [hereinafter Arbor Hill]. Therefore, the Court reviews both defendants' counsel's claimed hourly rate and contemporaneous billing records to determine the reasonableness of the requested fee. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

**A. Reasonable Rate**

A reasonable hourly rate is what a paying client would be willing to pay for an attorney's services. Arbor Hill, 522 F.3d at 184. Several factors impact this determination, including case difficulty and complexity, counsel's expertise and experience, and the resources required by the case. See id. at 184; see also Wong v. Hunda Glass Corp., No. 09 Civ. 4402(RLE), 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010) (citing Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) ("To determine the currently prevailing reasonable rate, courts look first to the lawyer's level of experience.").

The "district court should generally use the prevailing hourly rates in the district where it sits when deciding the amount of attorney's fees to award." Zhiwen Chen v. County of Suffolk, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013) (citing Arbor Hill, 522 F.3d at 191). In the Eastern District of New York, recent decisions have approved the following rates in FLSA cases: "$300-$450 for partners, $200-$325 for senior associates, [and] $100-$200 for junior associates…." See, e.g., Palaghita v. Alkor Capital Corp., No. 219-CV-1504(ARR)(RER), 2021 WL 4464121, at *12 (E.D.N.Y. Aug. 20, 2021) (quoting Martinez v. New 168 Supermarket LLC, 19-CV-4526(CBA)(SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) Report and Recommendation adopted by 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021); Scott v. BK Beasts LLC, No. 17-CV-699(RRM)(PK), 2018 WL 2088280, at *2 (E.D.N.Y. May 3, 2018) (quoting Romero v. Westbury Jeep Chrysler Dodge, Inc., No. 15-CV-4145(ADS)(SIL), 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016).

Here, defendants request an hourly rate of $325 to $425 for attorney Joshua Levin-Epstein and $175 to $225 for attorney Jason Mizrahi.[5] Defs. Oct 8, 2021 Letter 1. Mr. Levin-

---

[5] Counsels' hourly rate changed during the pendency of this case. Defs. Oct. 8, 2021 Letter 1. All but two of the entries in counsel's contemporaneous billing records pertain to work performed by Mr. Mizrahi. Id. at 2-5. The first

Epstein is the managing member of Levin-Epstein and Associates, P.C., has been in practice

since 2006, and served as a law clerk for a judge of the United States Bankruptcy Court for the

District of Connecticut. Id. at 6. Mr. Mizrahi, an associate at the firm, obtained his law degree in

2016 and focuses on litigation of FLSA and other employment matters. Id.

   The Court finds that the requested hourly rates for counsel are reasonable. The requested

rates are at or below the rates for counsel awarded to similarly experienced counsel in other Fair

Labor Standards Act cases in this District. See, e.g., Palaghita, 2021 WL 4464121, at *12

(quoting Martinez, 2020 WL 5260579, at *8) ("Courts in the Eastern District have recently

awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates,

[and] $100 to $200 for junior associates…in FLSA cases."); Scott, 2018 WL 2088280, at *2

(quoting Romero, 2016 WL 1369389, at *2) ("Recent decision in the Eastern District of New

York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450

for partners, $200-$325 for senior associates, [and] $100-$200 for junior associates….). The

Court also notes that plaintiff does not challenge defendant's counsel's requested rates.[6]

---

entry regarding Mr. Levin-Epstein's work is from October 13, 2020 and is billed at a rate of $325 per hour and the second entry is from April 25, 2021 and is billed at a rate of $425 per hour. Id.

[6] The Court is unable to locate decisions from the Eastern District of New York specifically approving of counsel's requested hourly rates except for opinions approving of a settlement. See, e.g., Laureano-Capellan v. Chirichella, No. 20-CV-360(RER) (July 15, 2020); Feliciano v. Yoon, No. 18-CV-6361(DLI)(JO) (Mar. 27, 2020). Counsel cites several cases from the Southern District of New York approving the requested hourly rates. See Defs.' Oct 8, 2021 Letter 7. However, the "forum rule" states that "[t]he reasonable rate used to determine the amount of attorney['s] fees to award is calculated according to the prevailing rates in the district in which the court sits." Simmons v. New York City Transit Auth., 5757 F.3d 170, 173 (2d Cir. 2009) (alterations in original) (citation omitted). I note that Courts in the Southern District of New York have also approved counsel's hourly rate. See, e.g., Antolini v McCloskey, No. 19-CV-9038(GBD)(SDA), 2021 WL 5411176, at * 14 (S.D.N.Y. Nov. 19, 2021) (approving a $225 hourly rate for Mr. Mizrahi in the context of a sanctions motion); Kim v. Superior Cafe Corp., No. 21-CV-3620(GBD)(RWL), 2021 WL 5315704, at * 10 (recommending approval of a $450 hourly rate for Mr. Levin-Epstein and $325 hourly rate for Mr. Mizrahi) Report and Recommendation adopted by 2022 WL 392406 (S.D.N.Y Feb. 9, 2022).

**B. Reasonable Amount of Hours**

Plaintiff's main challenge to defendants' requested fees is that some of defendant's counsels' billing entries are vague and the time spent on certain tasks was excessive. Pl's Opp. ¶¶ 8-16. Plaintiff specifically challenges approximately ten entries. Id., Ex. A. He also questions defendants' counsel's use of a quarter hour time keeping system rather than the use of smaller increments of time. Id. ¶ 9. In reply, defendants refute plaintiff's assertions and direct the Court to the protracted nature of this litigation. Defs.' Reply 4-5.

The Court will first address plaintiff's challenge to defendants' counsel's time keeping methodology. Although several Courts, in the exercise of their discretion, have reduced attorney's fees when billing records were kept in quarter hour rather than six-minute increments, such a reduction is most appropriate when counsel's record keeping practice resulted in overbilling. See G.B. ex rel N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 442 (S.D.N.Y. 2012) (collecting cases). In any event, a discrepancy caused by the use of quarter hour billing units is best addressed "in the context of the Court's review of the reasonableness of the time purportedly spent by counsel for the particular work performed." Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic, No. 10 Civ. 5256(KMW)(DF), 2012 WL 5816878, at *4 (S.D.N.Y. Nov. 14 2012). As discussed below, the Court finds defendants' counsel's total hours in this matter unreasonable. Rather than examine each individual entry, the Court employs an across-the-board reduction. See Ethelberth v. Choice Sec. Co., No 2016 WL 11469536, at *13 (E.D.N.Y. Aug. 5, 2016) (citing De Ping Song v. 47 Old Country, Inc., 09 Civ. 5566(LDW)(SIL), 2015 WL 10641286, *5 (E.D.N.Y. Oct. 1, 2015))

In total, defendants request attorney's fees for over 100 hours of work. Def's Oct. 8, 2021 Letter 2-5. Defendants represent that this time was spent preparing and serving deficiency letters,

attending discovery conferences, and drafting and filing the motion for sanctions. Id. In reviewing the time purportedly spent attending discovery conferences, the Court observes discrepancies between defendants' records and the entries on the docket sheet. For example: defendant's records reflect that 1.25 hours were spent attending a discovery conference on June 27, 2019, see Def's Oct. 8, 2021 Letter 2, however, the docket sheet states that the conference lasted approximately twenty minutes, see Minute Order dated June 27, 2019, ECF No. 23 (FTR Log #2:37-2:57); defendant billed one hour for a January 15, 2020 conference, see Def's Oct. 8, 2021 Letter 2, and the docket sheet reflects the conference lasted seventeen minutes, see Minute Entry Jan. 15, 2020, ECF No. 40 (FTR Log # 12:05-12:22); counsel billed .75 hours for a June 29, 2020 conference, see Def's Oct. 8, 2021 Letter 2, which lasted only thirty-four minutes, see Minute Entry dated June 29, 2020, ECF No. 83 (FTR Log # 3:30-4:04); and counsel billed one hour for a September 22, 2020 conference, see Def's Oct. 8, 2021 Letter 3, which lasted only thirty-one minutes, see Minute Entry dated Sept. 22, 2020, ECF No. 88) FTR Log # 12:15-12:46). The records provided by counsel do not state if any of the additional time attributed to each conference accounts for travel to the courthouse.[7] Even if this is the case, the time reflected should be discounted and it is not. See Seong Soo Ham v. Sushi Maru Express Corp., 736 Fed. Appx. 19, 20 (2d Cir. 2018) (summary order) (affirming the district court's exclusion of claimed hours and highlighting counsel's failure to discount "case-related travel"). These discrepancies undermine the reliability of counsel's records.

The drafting and filing of the motion for sanctions alone purportedly required over 90 hours of counsel's time,[8] id. at 3-5, a period the Court finds excessive. This time allocation is

---

[7] Generally, all Court proceedings have been conducted remotely since March 2020 because of the pandemic.
[8] This figure accounts for the five hour reduction to which defendants have consented, the result of a billing entry having been "inputted incorrectly at eight (8) hours instead of (3) hours." Defs.' Reply 4, ECF No. 127.

unusually high and far removed from what other Courts have found to be reasonable in similar circumstances. See, e.g., Vaigasi v. Solow Mgmt. Corp., No. 11 Civ. 5088 (RMB)(HBP), 2017 WL 3868990, at * (S.D.N.Y. Sept. 5, 2017) (collecting cases and finding more than 65 hours spent drafting a sanctions motion to be excessive); Gortat v. Capala Brothers, Inc., No. 07-CV-3629(ILG), 2009 WL 10706565, at *2 (E.D.N.Y. June 29, 2009) (finding 76.5 hours spent on sanctions motion to be unreasonable). The Court is unpersuaded by counsel's reliance on Scooroojballie v. Port. Auth. of N.Y. & N.J., No. 15-CV-1230(WFK)(PK), 2020 WL 9934418, at *14 (E.D.N.Y. Nov. 10, 2020), Report and Recommendation adopted by 2021 WL 1827116 (E.D.N.Y. May 7, 2021). Unlike the present matter, Scooroojballie involved a request for attorney's fees after an appeal of a final judgment on five separate grounds. Id. at *1. Therefore, defendants' reliance on Scooroojballie is inapposite.

When presented with "excessive, redundant, or otherwise unnecessary" billing entries, the Court may reduce the requested fee by a reasonable percentage." See Francois v. Mazer, 523 Fed. Appx. 28, 29 (2d Cir. 2013) (summary order) (quoting Kirch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998)); see also Garcia v. City of New York, No. 11-CV-2284(JBW)(JO), 2013 WL 5574507, at *6 (E.D.N.Y. Oct. 9, 2013) (quoting Green v. City of New York, 403 Fed. Appx 626, 630 (2d Cir. 2010)) ("District courts are authorized 'to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application'".). This percentage reduction may be employed rather than engaging in an unduly burdensome entry-by-entry analysis of the fee application. See Capital One, N.A. v. Auto Gallery Motors, LLC, No. 16-CV-6534(PKC)(SIL), 2020 WL 423422, at * 5 (E.D.N.Y. Jan. 27, 2020) (quoting Alicia v. City of New York, 272 F. Supp. 3d 603, 612 (S.D.N.Y. 2017)) ("It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour

reduction would be unwieldy or potentially inaccurate."). In the context of the instant sanctions motion, the Court finds a one-third reduction in the requested fee is reasonable. This reduction is in accord with action taken by other Courts in this Circuit. See, e.g., Congregation Rabbinical Coll. Of Tartikov, Inc. v. Village of Pomona, 188 F. Supp. 3d 333, 345(S.D.N.Y. 2016) (reducing requested fees by thirty percent to account for "excessive hours and vague entries"); Gortat, 2009 WL 10706565, at *2 (reducing the requested fee for a sanctions motion by one-third when the total amount of hours billed was unreasonable); AW Indus., Inc. v. Sleep Well Mattress, Inc., No. 07-CV-3969(SLT)(JMA), 2009 WL 485186, at *6 (E.D.N.Y. Feb. 26, 2009) (adopting a recommendation that a requested fee be reduced by one-third to account for excessive hours and vague billing entries).

Therefore, defendants' counsel is awarded $15,591.67 in attorney's fees as a sanction for plaintiff's counsel's discovery violations. This amount represents a one-third reduction of defendants' counsel's requested fee.[9]

**C. Costs**

Defendants seek costs of $88.70. Defs.' Oct 8, 2021 Letter 7. The records provided with defendants' application state that this fee encompasses $36 in transcription fees and $52.70 for postal service payments. Id., Ex. C. Plaintiff objects to the postal service payments. He argues that although they appear connected to the service of subpoenas, defendants have not provided an adequate reason for their inclusion in the instant application. Pl.'s Opp., Ex. A.

"Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable." Labarbera v. ASTC Laboratories Inc., 752 F. Supp. 2d 263, 279 (E.D.N.Y.

---

[9] Although defendants' counsel initially requested $24,512.50 in fees, see Defs.' Oct. 8, 2021 Letter 7, defendants later conceded that one entry was overbilled by $1,125, see Defs.' Reply 4. Therefore, the Court calculated the one-third reduction based upon a total fee request of $23,387.50.

2010) (citing LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998)). Transcription

fees may be recovered when they are reasonable and necessary for the litigation. Sai Qin Chen v.

East Market Rest., Inc., No. 13 Civ. 3902(HBP), 2018 WL 3970894, at *5 (S.D.N.Y. 2018)

(quoting Nat'l Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp., No. 11-CV-

3652(MKB), 2014 WL 887222, at *11 (E.D.N.Y. Jan. 6, 2014)). Postage fees are also properly

included in an award of costs. See Westport Ins. Corp. v. Hamilton Wharton Grp Inc., 483 F3d.

Appx. 599, 605 (2d Cir. 2012) (summary order). A party seeking reimbursement for litigation

costs bears the burden of supplying records supporting the request. See Pineda v. Frisolino, Inc.,

No. 15 Civ. 3774(GBD)(BCM), 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018) (citing

Hernandez v. JRPAC Inc., No. 14 Civ 4176(PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6,

2017)).

Although defendants supplied postage receipts for two mailings – one to J.P. Morgan

Chase Bank and another to the Internal Revenue Service – they do not explain the connection

between these costs and their efforts to obtain discovery from plaintiff. The Court will not award

costs which are unrelated to plaintiff's counsel's discovery violations. Lema v. Mugs Ale House

Bar, No. 120CV02182(PKC)(JO), 2014 WL 1230010, at *9 (E.D.N.Y. Mar. 21, 2014) (denying

costs unrelated to the litigation). Plaintiff does not object to the remaining costs - $36 in

transcription fees. Therefore, defendants are awarded $36 in costs.

## CONCLUSION

Accordingly, it is respectfully recommended pursuant to 28 U.S.C. § 636(b) that plaintiff's

motion to amend should be denied. Defendants are awarded $15,591.67 in attorney's fees and $36

in costs as a sanction for plaintiff's counsel's discovery violations. Plaintiff's counsel shall pay

defendants this amount within thirty days of this Report and file proof of payment on the docket.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: March 3, 2022
        Brooklyn, New York