UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GURSEWAK SINGH

                                  Plaintiff,

           -against-

LINTECH ELECTRIC, INC.;
LINDEN J. TUDOR

                             Defendants

-------------------------------------------------------------X

**DECLARATION**

**OBJECTIONS TO
THE REPORT AND
RECOMMENDATION OF
MAGISTRATE
JUDGE LOIS BLOOM
DATED 3/3/22**

EDNY 18 CV 5780

JONATHAN SILVER, an attorney duly licensed to practice law in the Courts of the

State of New York, affirms under the penalties of perjury:

1. I am the attorney for the plaintiff in this action and I am familiar with the facts and

circumstances set forth herein.

2. I submit this Declaration to assert Objections to the Report and Recommendations

of Magistrate Judge Lois Bloom dated 3/3/22.

3. In the course of this review of the Magistrate Judge's Report and Recommendations,

this Honorable Court "...may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see DeLuca v. Lord,

858 F. Supp. 1330, 1345 (S.D.N.Y. 1994). The parties may raise objections to the Magistrate

1

Judge's report and recommendation, but they must be "specific," "written," and timely "submitted "after being served with a copy of the recommended disposition." FED. R. CIV. P. 72(b)(2); accord 28 U.S.C. § 636(b)(1)(c). The Court must conduct a de novo review of those portions of the R&R or specified proposed findings or recommendations to which timely and proper objections are being made.

**PART 1**

**MOTION TO AMEND**

4. Federal Rules of Civil Procedure Rule 15(a) (2) provides the standard to be applied when an amendment requires leave of Court. Rule 15(a)(2) requires the Court to "freely give leave when justice so requires."

5. The liberal standard to be applied to grant leave to amend under Rule 15(a)(2)'s but leave to amend may "...for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Platt v. Inc. Vill. of Southampton, 391 Fed. Appx. 62, 66 (2d Cir. 2010) (summary order) (quoting Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009)); see also Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

6. In examining the potential prejudice, courts "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent plaintiff from bringing a timely action in another jurisdiction." (Citation omitted).

7. Leave to amend may also be denied when there has been undue delay, without a "satisfactory explanation," and the nonmoving party will be prejudiced or the proceedings

unduly delayed. See State Farm Ins. Cos., 183 Fed. Appx. at 37-38 (quoting Grace v. Rosenstock, 228 F.3d 40,53-54 (2d Cir. 2000)). The opposing party is prejudiced when an amendment will cause it to incur "additional time and expense to respond to a claim that should have been before the court" earlier. See Farricker v. Pension Dev., Inc., 513 Fed. Appx. 47, 48-49 (2d Cir. 2013) (summary order) (quoting Williams v. Citigroup Inc., 659 F.3d 208, 212 (2d Cir. 2011)). Ordinarily, delay alone is not a sufficient reason to deny a motion to amend. Kalyna v. City of New York, No. 16-CV-273(AMD)(CLP), 2018 WL 1342488, at *7 (E.D.N.Y. Feb. 28, 2018). However, a District Court has discretion to deny a motion to amend "made after an inordinate delay, [when] no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceeding by, for example, introducing new issues for discovery." Id. (internal quotation marks omitted) (quoting State Farm Ins. Cos. V. Kop-Coat, Inc., 183 Fed. Appx. 36, 37-38 (2d Cir. 2006)).

8. When plaintiff commenced this action on 10/16/2018, he sought from the defendant employer and its principal unpaid wages, unpaid overtime, unpaid prevailing wages and other relief. He primarily worked erecting scaffolding (sidewalk sheds) upon New York City Housing Authority buildings in New York City. Those claims remain but now, following the production of payroll checks by the defendants that were allegedly provided to and cashed by plaintiffs another potential claim exists.

9. Section 191 of the NYLL requires manual laborers be paid timely (within 7 days after the end of the work week). Section 191 of the NY Labor Law provides in relevant part as follows:

§ 191. Frequency of payments

1.  Every employer shall pay wages in accordance with the following provisions:

   a.  Manual worker.

   b.  **A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned;** provided however that a manual worker employed by an employer authorized by the commissioner pursuant to subparagraph.

10. In addition, New York Labor Law § 198(1-a) expressly provides a private right of action for a violation of Labor Law § 191." Vega v. CM & Assocs. Constr. Mgmt., LLC, 175 A.D.3d 1144 App Div 1st Dept September 10, 2019. That appears to have been the first reported case from an Appeals court in New York declaring the basis for an untimely payment of wages as actionable. It certainly was the first case plaintiff's attorney found to that effect.

11. The Court in Vega also stated that NYLL Section 198(1-a) allows an award of damages based on untimely payments even if the employer had "pa[id] the wages that [we]re due before the commencement of [the] action." Id. at 1145. The court reasoned that an "underpayment" for purposes of Section 198(1-a) occurs "[t]he moment that an employer fail[s] to pay wages in compliance with section 191(1)(a)."

4

12. Even if there was eventual payment, the employee could seek "statutory remedies," including liquidated damages.

13. Following the Decision in <u>Vega</u>, courts in the Second Circuit began to follow its construction of the New York Labor Law, see, e.g., <u>Mabe v. Wal-Mart Assocs., Inc.</u>, No. 20-CV-591, 2021 U.S. Dist. LEXIS 50954, 2021 WL 1062566, at *5 (N.D.N.Y. Mar. 18, 2021); <u>Sorto v. Diversified Maint. Sys., LLC</u>, No. 20-CV-1302, 2020 U.S. Dist. LEXIS 242856, 2020 WL 7693108, at *2-3 (E.D.N.Y. Dec. 28, 2020); <u>Duverny v. Hercules Medical P.C.</u>, No. 18-CV-7652, 2020 U.S. Dist. LEXIS 37547, 2020 WL 1033048, at *6 (S.D.N.Y. Mar. 3, 2020); <u>Scott v. Whole Foods Mkt. Grp., Inc.</u>, No. 18-CV-86, 2020 U.S. Dist. LEXIS 255455, 2020 WL 9814095, at *3 (E.D.N.Y. Feb. 5, 2020). See also <u>Rodrigue v. Lowe's Home Ctrs.</u>, LLC, 2021 U.S. Dist. LEXIS 162849.

14. After defendants belatedly produced payroll checks allegedly payable to and cashed by the plaintiff (which he denies), it became apparent that there was now a significant issue of fact in dispute concerning those checks. Either he received them or not. But separate from that issue, was the fact that the checks finally produced were dated weeks, months even a year after the work period defendants noted on the checks. Those payroll checks establish prima facie proof of a claim of untimely payments made actionable under Section 191 of the NYLL that only became apparent after defendant finally provided it to the plaintiff during discovery.

15. Separate from that untimely issue was the fact that, for example, 33 checks produced by defendants were each dated 1/20/2017. (Docket 102, #21). None showed even

5

a bank endorsement. Plaintiff examined the checks produced and indicated he neither received them nor endorsed them.

## THERE WILL BE NO SIGNIFICANT EFFECT ON DISCOVERY

16. Plaintiff was deposed over two separate dates first on September 24, 2019, and then on October 4, 2019. (a dispute on the second day of the deposition required a Court ruling see Doc 29).

17. Counsel next appeared in Court on November 5, 2019 (Docket 30). Defendants now wanted to again depose plaintiff based on the additional records defendant had "newly located" from their accountant and exchanged and the Court granted that request.

18. As defendants had still not produced a single check, there was then no need to conduct a further deposition of the defendants as the plaintiff when deposed had denied that he had signed any of the time sheets or received any of the wage stubs produced by defendants.

19. Later, another email was received from defendant's counsel on December 23, 2019. with a Dropbox link containing "Defendants' supplemented document production." (Docket 43, #4). A screen shot was taken which is Docket 43, #5.

20. There were no checks among the documents provided even though one category is defined as "Cashed checks." All that contained was an accountant's summary.

21. A telephone conference with the Court was held on January 15, 2020. (Docket 40). The Court was advised that no checks were received although counsel for defendant stated that they were produced by email on December 23, 2019.

22. Later that day, a second email from defendant's counsel with a further Dropbox link was received. This time the screen shot taken shows 8 not 7 images. (Docket 43, #6)

23. The new documents produced were copies of checks. Only one of those checks had any markings indicating that it had been deposited or cashed or what bank that had occurred. Two of the checks were presented to the Court (Docket 43, #7).

24. A letter to the Court dated January 27, 2020, was then filed by plaintiff to obtain the bank records from the account from which those checks were issued as well as a further deposition of the defendants based on the newly found documents provided. (Docket 43)

25. The Court conferred with counsel on April 13, 2020 (Docket 63) and directed that defendant's produce the bank records by the end of business that day.

26. Defendants had still not produced wage reporting documents such as NYS40 and IRS 941 forms so that was the subject of a further Court conference held on 6/29/2020 (Docket 83). Defendants were directed to produce those documents by July 10, 2020.

27. The Court conducted another conference on 9/22/2020 and directed that defendant's further deposition proceed on 10/12/2020, the plaintiff to be further deposed on 10/21/2020 and a non-party to be deposed by 12/1/2020. (Docket 88).

28. Those depositions did not take place and remain outstanding.

29. The Court conducted another conference on 10/29/2020 and directed that all discovery be stayed pending defendant's motion for sanctions (Docket 92).

30. Following the issuance of the Report and Recommendation of the Magistrate Judge Lois Bloom dated 7/20/2021 concerning the motion for sanctions (Docket 109), plaintiff sought to lift that stay to continue with the case, but that request was denied. (Docket entry 7/30/2021). This Honorable Court adopted that Report and Recommendation on September 8, 2021. The stay remained in effect.

31. Magistrate Bloom then held a conference with counsel on 9/23/2021 to discuss the status of discovery (the stay was no longer in effect but there was no actual Docket entry to that effect) at which time the Court was advised about the multiple checks each dated 1/20/2017 covering wages due for work as long as one year before that date and the Court was advised that plaintiff was requesting leave to amend his pleadings. The parties were given briefing schedules for the motion to leave to amend by 10/8/2021 and for defendants to file their application for fees. (Docket 116).

32. Plaintiff filed the motion for leave to amend on 10/8/2021 as directed. The Court held a conference on 10/13/2021 (Docket entry 10/13/21) and directed the parties to exchange settlement demand and offer and to report to the Court. The parties reported there was no settlement, and the Court held a further conference on 11/23/2021 at which time the parties agreed to submit to a mediation to be conducted by Magistrate Bloom. (Docket entry 11/23/21)

33. That mediation occurred on 1/6/2022 (Docket 1/6/2022) but the parties were not able to settle the case.

34. Plaintiff's motion for leave to amend to essentially add the single word "untimely" to the complaint to the existing claims of "unpaid wages etc." was denied in the Report and Recommendations of Magistrate Bloom dated March 3, 2022. (Docket 131).

35. The very same further depositions of both the plaintiff and the defendant that were directed in September 2020 by the Court to occur (Docket 88) must still be conducted. Assuming leave to amend will be granted, defendant merely needs to add to their list of questions whatever additional questions they may have concerning the checks they obviously already possessed. But as the checks establish prima facie and likely irrefutable proof of untimely payment of wages clearly there is very little to ask.

## MERITORIOUS CLAIM TO BE ADDED

36. As already stated, the checks themselves establish proof of the claim of untimely payment.

## PROGRESS OF THE CASE

37. The same discovery is to be done even with an untimely payment claim. Other than completing the depositions, there is nothing that plaintiff possesses to document or to prove the untimely claim other than the checks. The case will progress in the same fashion as it would have already after amended pleadings are served.

## UNDUE HARDSHIP OR BAD FAITH

38. The untimely wage claim to be added is grounded in law, fully supported by defendants' own records and is being claimed to obtain for plaintiff damages he is due under law and for no other reason. Having failed to timely pay the plaintiff, defendants are liable

for liquidated damages and other relief but that does not create any obligation other than as imposed under law.

## DELAY

39. There is no additional delay of any significance (if at all) after amended pleadings are served simply by granting plaintiff leave to amend to add an untimely payment of wages claim.

## TIMING OF THIS APPLICATION TO AMEND

40. The claim of untimely payment of wages under Section 191 of the NYLL became a viable claim and established support for a claim for liquidated damages and other relief when it was so stated in the Vega case in September 2019. It is only after that Decision came down that Courts in the Second Circuit confirmed the interpretation of state law made in Vega. The Second Circuit cases cited above start in the year 2020.

41. The stay of the case was in effect for the period 10/29/2020 until 9/15/2021.

42. Defendant had not provided to plaintiff outstanding bank records until it was compelled to do so by the Court's directive of April 13, 2020 (the Court showed its impatience by directing defendants to do so by the end of business that same day) and did not produce wage reporting documents such as NYS40 and IRS 941 forms until it was directed to do so by the Court on 6/29/2020 to do so by July 10, 2020.

43. Plaintiff's motion to amend was made on 10/8/2021 but was held in abeyance until the parties submitted to mediation which concluded on 1/6/2022.

44. There was no inordinate delay in making this application nor can defendants show any prejudice in it being granted at this time.

10

45. That plaintiff's counsel learned of the viability of a claim for untimely payments in 2021 and then sought leave to amend only months later was neither tardy nor unsurprising in view of the recent Decisions made in state court and in this Circuit.

46. This is not a case where defendant can claim any surprise that their own records demonstrate untimely payment.

47. In view of the extraordinary lengths taken by defendants to obstruct and stall and delay production of their own records, this Court should not allow defendants to blame plaintiff alone for how long it has taken for this case to move along.

## UNCLEAN HANDS

48. The delays by the defendants in producing their bank records including checks and bank statements until after depositions were held more than one year after this action began and only after various court directives to do so were never explained except for a statement that "newly found" documents were obtain from their accountants. Plaintiff until such records were produced could not anticipate that such records would demonstrate untimely payments. Plaintiff still maintains such payments were not made at all. Now that such records have been produced it is for the trier of fact to find that plaintiff either was or was not paid as claimed by defendants but in any event was paid in an untimely manner.

## EQUITABLE ESTOPPEL

49. The Court, in considering any claim of delay in seeking leave to amend should respectfully consider the application of equitable estoppel will should effect if not preclude the defendants from claiming plaintiff delayed his motion to amend as it was "'...defendant's affirmative wrongdoing ...'" withholding without explanation the production

of their bank records including checks, which, when received, created the claim of untimely wage payment... <u>Putter v. North Shore Univ. Hosp.</u>, 7 N.Y.3d 548. See also <u>Zumpano v Quinn</u>, 6 NY3d 666 quoting <u>General Stencils v Chiappa</u>, 18 NY2d 125.

## THE MAGISTRATE'S REPORT AND RECOMMENDATION

50. The Magistrate in her Report and Recommendation indicated that there would be a "...substantial delay in the proceedings..." if leave to amend was granted; that doing so would "unfairly 'restart' the discovery process."; that defendants claim plaintiff has already been deposed twice"; that defendants will suffer prejudice if leave is granted; that the "amendment will further delay the resolution of this matter."; that "Enough is enough." that "The time has come for this battle to end."

51. Respectfully, there will be no substantial delay; discovery will not need to restart; plaintiff was not deposed twice, just once on two separate dates; defendants will not suffer prejudice nor can they or have they shown any basis for such a claim; the amendment will not further delay the just and fair resolution of this case except for the limited time it takes for service of amended pleadings.

52. The case may be a battle but it is clear that defendants at the very best v violated Section 191 of the NYLL by not paying wages for in some case up to one year and then issuing 33 wage checks all dated 1/20/17 (which raises an entire area of doubt about whether or not those checks actually were issued at all). Of course, plaintiff still claims no checks were paid to him. Justice will be served when and if plaintiff is given leave to amend and the claim for untimely payment of wages then be heard.

## CONCLUSION

53. The Court should grant leave to amend as requested.

## PART 2

## ASSESSMENT OF ATTORNEYS FEE

54. The applicant for attorney fees bears the burden of establishing entitlement to an award, which includes documenting the appropriate hours and maintaining accurate time records. Hensley v Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L.E.2d 40 (1983). Furthermore, the submission of time records reflecting counsel's hours expended must have been made contemporaneously with the associated work and is central to an application for attorneys' fees. Lewis v. Coughlin, 801 F.2d 570, 570 (2d Cir. 1986).

55. Defendants' counsel only bills by the quarter hour. Hardly accurate for a call lasting 17 minutes unless he cuts it down to .25 hours which he provides no indication he is doing.

56. His records submitted contained a disingenuous representation to the Court. There is a 10/7/2021 entry concerning a "Draft letter for attorney's fees..." The client was only billed 3 hours for that item (that is not credible either for a letter essentially cutting and pasting time records) and counsel misrepresents to the Court that it took 8 hours to do so. Such misrepresentation should not be countenanced.

57. Where accurate contemporaneous records have not been kept, the Court should not award the full amount requested. Luciano v. Olsten Corporation, 925 F. Supp.956, 963 (E.D.N.Y. 1996). A Court may reduce a fee for work that is excessive and/or duplicative. See Luciano, supra, 925 F. Supp. at 964-965.

13

58. Is it reasonable to believe that all of the items listed were accomplish in quarter hours only? Wasn't there a task performed that took a period of time other than on the quarter hour. My clients receive billing based on 6 minute intervals (equal to 1/10th of an hour).

59. Is it reasonable to accept that almost all of the time records are stated in full hours? Sounds like estimates. The billing records are thereby inaccurate and should be rejected.

60. The Magistrate found that defendants' counsel was requesting fees for over 100 hours of work; over 90 hours just for the drafting and filing of the motion for sanctions alone. The Magistrate determined that to be "excessive" and "unusually high and far removed from what other Courts have found to be reasonable in similar circumstances."

61. In other cases in which a fee was to be assessed for a motion for sanctions, the Magistrate reported, a claim of 65 hours was found to be excessive; a second case in which 76.5 hours were charged for such a motion was also found to be excessive. This case involving a claim of 92 hours which is not just excessive, it is incredible.

62. It is not reasonable to accept that counsel expended 10 hours of work still drafting a memorandum of law on 1/7/2021 after he started drafting on 12/17/2020 for 4 hours, 12/19/2020 for 6 hours, then worked on the draft for 7 more days from 12/22/2020 to and including 12/31/2020 (another 30.25 hours) then 7 more hours on 1/5/2021 and 1/6/2021.

63. Then there is the vague and undefined entry for 1/8/2021 in which 7 hours was allegedly expended to "finalize" the motion. After spending 47.5 hours from

14

12/17/2020 until 1/7, another 7 hours is required to finalize what? There are no specifics offered. These vague items should have been rejected, not just reduced. In <u>Short v. Manhattan Apartments, Inc.</u>, 286 F.R.D. 248, 255 (S.D.N.Y. 2012) it was stated that "a court may reduce requested fees if the attorneys' documentation of their hours is vague,

64. The Court must also consider whether the time records submitted by Plaintiff's counsel reflect a reasonable expenditure of hours for this particular case. *See* <u>Lunday</u>, 42 F.3d at 134; <u>Jaramillo v. Banana King Rest. Corp.</u>, No. 12-CV-5649 (NGG)(RML), 2014 WL 2993450, at 1 (E.D.N.Y. July 2, 2014) ("[T]he court must assess whether the hours expended by plaintiff's counsel were reasonable, and exclude any hours that were excessive, redundant, or otherwise unnecessary to the litigation.").

65. The alleged hours claimed are more than excessive. They are, according to the Magistrate, "unusually high" and "far removed" from what is reasonable. Taking those vague and completely unreasonable claims as a starting point and then reducing those claims by only one third sends the unfortunate message that you can make completely unreasonable and vague claims and all that will occur is that you get reduced, somewhat.

66. The proper result should have been removing those vague and incredible portions completely, not just partially. At the very least, a to an amount substantially less than two thirds of what is claimed would be reasonable.

67. For all the reasons stated, and based on the applicable law and facts, any award of attorney's fees should be modified to what would be fair and reasonable, certainly not what has been requested or what was recommended so far.

## THE MAGISTRATE'S REPORT AND RECOMMENDATION

68. The Magistrate quite correctly found the time records presented were "unusually high" and "far removed" from what is reasonable but allowing vague and incredible charges to be included was improper and simply cutting down from those incredible time records by one third is not reasonable.

## CONCLUSION

69. The Court should reduce the fees requested to no more than one half of the sum claimed.

Dated: March 17, 2022

JONATHAN SILVER

16